WALKER (WASHINGTON v.). See Case No. 17,235.

WALKINSHAW (TOBIN v.). See Cases Nos. 14,068–14,070.

WALKINSHAW (UNITED STATES v.). See Case No. 16,633.

## Case No. 17,091.

### The WALKYRIEN.

[3 Ben. 394.] [1]

District Court, E. D. New York. Sept., 1869.[2]

MARITIME LIENS—SUPPLIES.

1. Where supplies were furnished, in the port of New York, to a vessel which hailed from a British port, carried the British flag, and was intending to proceed to a foreign port to be sold as a British vessel, the supplies being furnished on the order of the owner, but on the credit of the vessel, and being charged to her; Held, that her owner could not be permitted to claim that she was a domestic vessel, even though it had been proved that her owner resided in New York.

[Cited in The Brantford City, 29 Fed. 386.]

2. The vessel was liable for the supplies.

[Cited in The George T. Kemp, Case No. 5,-341; The Alice Tainter, Id. 195; The Rapid Transit, 11 Fed. 330; The Scotia, 35 Fed. 909.]

In admiralty.

Emerson, Goodrich & Wheeler, for libellants.

Beebe. Donohue & Cooke, for claimant.

[The case was taken to the circuit court on appeal, where the decree of this court was affirmed. Case No. 17,092.]

## Case No. 17,092.

### The WALKYRIEN.

[11 Blatchf. 241.] [1]

Circuit Court, E. D. New York. July 2, 1873.[2]

MARITIME LIENS — SUPPLIES — PRESUMPTIONS — STALE CLAIMS—BONA FIDE PURCHASER.

1. Supplies were furnished, in the port of New York, to a foreign vessel. On a libel in rem against her, for their value, it was contended that the presumption of credit to the vessel was rebutted by the fact that her foreign owner resided in New York. It appeared that the person who furnished the supplies did not know that such owner resided in New York: Held, that, in the absence of such knowledge, there was no rebuttal of such presumption.

[Cited in The George T. Kemp, Case No. 5,-341; The Rapid Transit, 11 Fed. 330; The J. L. Pendergast. 29 Fed. 128; The Brantford City, Id. 386; The Scotia, 35 Fed. 909.]

2. The libel alleged that the supplies were ordered by the "master and owner" of the vessel. They were shown to have been ordered on the request of the master: Held, that this was sufficient.

3. A few days after the supplies were furnished, the vessel sailed from New York on a foreign voyage. The libel was filed directly after she returned therefrom to New York. In the mean time, she had been sold to a bona fide purchaser for value, who was ignorant of the lien claimed: Held, that there was no laches in enforcing the lien, and that the sale of the vessel did not destroy the lien.

[Cited in The Alice Tainter, Case No. 195; The Tonawanda, 27 Fed. 576.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 17,092.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 17,091.]

[Appeal from the district court of the United States for the Eastern district of New York.]

In admiralty.

William W. Goodrich, for libellant.
Charles Donohue, for claimants.

HUNT, Circuit Justice. The bark Walkyrien, to which the supplies were furnished, was a foreign vessel. She carried British colors, hailed from a British port, was registered in the name of a British subject, and had on her stern the words, "The Falcon, of Cape of Good Hope."

1. The appellants, admitting the law to be, that, where supplies are furnished to a foreign vessel, credit is presumptively given to the vessel, insist that this case is not within the rule, because the foreign owner was in fact a resident of New York City, where a part of the supplies were furnished. The general rule, as stated, is laid down in numerous cases. The Grapeshot, 9 Wall. [76 U. S.] 129, 136; The Guy, Id. 758; The Lulu, 10 Wall. [77 U. S.] 192; The Patapsco, 13 Wall. [80 U. S.] 329. If there be such a qualification of the rule as the appellants claim, it must be in connection with the knowledge of the person furnishing the supplies, that the owner's residence was in New York. Unless that fact is established, it is difficult to see how his presumed intention to credit the vessel, and not the owner, can be affected. No such proof is given in the case before us, but the libellant testifies that he had no such knowledge.

2. The libel alleges, that the supplies were ordered by the "master and owner." The proof is, that they were ordered by Mr. Jewett, on the request of the captain. He is spoken of by the libellant as the agent, and proof is given that he was then the owner. The allegation of the libel, that the order was from the master and owner, is sufficiently established by proof that the order came from either of them, or from another agent. The point of the allegation is, that the supplies were ordered by one having authority to bind the vessel. This may be done upon the order of the agent or owner. As a variation between the pleadings and proofs, it is unimportant. As a fact, it is unimportant, except upon the question of crediting the vessel or the owner, and this point has been already disposed of.

3. The appellants insist, that the lien on the vessel is lost by laches or negligence in enforcing it. The supplies were furnished in December, 1865, and, within a few days after their completion, the bark sailed on a foreign voyage, from which she did not return until February, 1867. The libel was filed directly after her return. There is evidence that the bark was sold to purchasers for value, who were ignorant of the present lien. The arrangement for her sale was made before she left New York, and the money was advanced to Jewett, but she was actually sold in a foreign port. The repairs were made and the supplies furnished in order that the vessel might sail. That was their object and purpose. "Ships were made to plough the sea, and not to rot against the wall." Supplies are furnished for the same purpose, and it would entirely defeat this purpose, if the creditor were bound to enforce his lien for them before the vessel should leave port, under the penalty of its forfeiture. The lien was enforced on the first return of the vessel to the port of New York. I am not cited to any authority that this is laches, nor am I cited to any authority that the sale to a bona fide purchaser in a foreign country destroys the lien. I do not think good authority can be found for either of these propositions.

The decree [Case No. 17,091] should be affirmed, with costs.