## THE LAURETTA.

*(District Court, D. New Jersey. December 3, 1881.)*

1. ADMIRALTY—MARITIME LIENS—DELAY—WAIVER.
   In the absence of any satisfactory explanation, delay in enforcing maritime liens, after a reasonable opportunity to do so, will be deemed a waiver of such liens, as against subsequent purchasers for value and without notice.

In Admiralty. Libel *in rem.*

*A. Hugg,* for libellant.

*R. L. Jenkins,* for claimant.

NIXON, D. J. This is a libel *in rem* for materials furnished and work done by the libellant on the schooner Lauretta, belonging to the port of Baltimore, at the port of Philadelphia.

The proofs show that in the month of August, 1876, while the vessel was at the city of Camden, in the state of New Jersey, certain materials were supplied and work performed for repairs upon her by the libellant, at the request of John McMurry, who was the legally-authorized attorney of the owner, Coleman Taylor, then residing at Baltimore, Maryland. The vessel continued the property of the said Taylor until the seventh of February, 1877, when she was sold to the claimant by bill of sale duly executed; in which there was a covenant that she was free and clear of all claims, demands, or encumbrances. By the terms of the sale the purchaser was allowed to retain in his hands two or three hundred dollars of the consideration money for the period of six months, as security against any secret liens or encumbrances. At the end of six months, no demands having been made against the vessel, the claimant paid over the residue of the purchase money to the vendor. After the beginning of the oyster season in Philadelphia, in the fall of 1877,

the libellant went to the Spruce-street wharf, where the vessel was then lying, and told the claimant that he had a claim against her for materials and work. No bill of items was presented. The only reply to this demand that seems to have been made by the claimant was: " There is the vessel. If she owes you anything attach her and make your money." No other claim was made, then or afterwards, and no steps taken to enforce a lien against the vessel until the libel was filed in this case, July 20, 1878, nearly two years after the debt was contracted.

Three facts appear quite distinctly in the proofs, all of which are important in the decision of the case:

(1) That during all the time which elapsed between the contraction of the debt and filing the libel, the vessel was engaged in the oyster trade at Phila-delphia, and was not out of the Delaware river and bay; (2) that the libellant knew of the sale of the vessel to the claimant, about the time that the transfer took place; (3) that the place of business of the claimant was near that of the libellant, and that no notice of the demand, except as above stated, was ever given by the libellant to the claimant.

The case turns upon the question of laches. Is the claim, under the circumstances, stale? While a maritime lien confers upon ma-terial-men the right to enforce their claims, as against foreign vessels, by proceedings *in rem*, yet the interests of navigation demand that some restrictions should be placed upon such right. Vessels are a species of property, the ownership of which is frequently changed. The lien is a secret one, and purchasers, by the exercise of the great-est diligence, cannot always ascertain the existence of such encum-brances, or guard against loss, if they are suffered to attach for any considerable length of time. Public policy, therefore, requires that when innocent purchasers are to be affected, reasonable diligence should be used in enforcing the lien, or the creditor should be con-sidered as having waived it. Mere lapse of time, it is true, will not ren-der a demand stale, where there are circumstances—as, for instance, the absence of the vessel—which hinder its enforcement. But where the opportunity has occurred, and no proceedings have been taken by the lienor to hold the vessel liable, until after new parties, without notice of the encumbrance, have come into the ownership, it is obviously inequitable and unjust to allow the lien to hold longer than is necessary to afford time for its reasonable enforcement. These are elementary principles, found in all the books and adjudged cases on the subject.

It is difficult to lay down any general rule where the circumstances of each case differ so widely. The safest I have found is the one

adopted by the learned judge in the eastern district of Michigan, in *In re Dubuque*, 2 Abb. (U. S.) 33, where it is said that "a delay to enforce a maritime lien, after a reasonable opportunity to do so, should be deemed a waiver of the lien as against subsequent purchasers or encumbrancers, in good faith and without notice, unless such delay is satisfactorily explained." There is no explanation of the delay in the present case. The alleged liability of the vessel was incurred in August, 1876. Nearly two years elapsed before the libel was filed. In the mean time the vessel was transferred to the claimant, without notice of the lien. She was within reach of the process of the courts, if the libellant had made any effort to hold her. I am clearly of the opinion that he ought not now to be allowed to collect his claim out of the property of an innocent purchaser, and that the libel must be dismissed.

With regard to costs, there must be a decree against the libellant except for what has been incurred by the laches of the proctor of the claimant. More than a year elapsed before a default was entered for want of an answer. A reference was then had, and a final decree taken on the report of the commissioner. On a judgment and execution against the stipulators on their bond nothing was realized here, and the libellant procured a copy of the whole record for the purpose of originating proceedings elsewhere.

At this stage the claimant was allowed to open the decree and put in an answer, but all the costs incurred from the filing the libel until the filing of the answer must be paid by the claimant.