## THE TONAWANDA.[1]

### JARVIS and others *v*. THE TONAWANDA.

*(District Court, E. D. Pennsylvania.  May 4, 1886.)*

MARITIME LIEN—FOREIGN PORT—COOPERAGE—WHARFAGE—NEGLIGENCE.

The libelants furnished wharfage and cooperage materials for the ship Tonawanda, of Philadelphia, at Jersey City, at the request of A & Co., who had been the ship's agents in New York, and who were dealt with as such, when in fact, although unknown to the libelants, they were the owners of the ship. Payment was promptly sought of A & Co., and, upon their promise to pay, the Tonawanda was allowed to sail for Europe. She returned to Philadelphia twice, but of these visits libelants knew nothing. On her subsequent return to Philadelphia she was attached. This was two years after the expenses were incurred. In the mean time the ship had been bought by the respondents. *Held* that, as the expenses had been incurred in a foreign port, the unpaid charges became a lien to which the libelants were still entitled, as the facts do not show them to have been guilty of negligence.

In Admiralty.

*Theodore M. Etting* and *Thomas S. Williams*, for libelants.

*Henry R. Edmunds*, for respondent.

BUTLER, J.  The libelants furnished the Tonawanda with wharfage, at Jersey City, in July and August, 1882, for which (and a small amount of material for cooperage) $272.75 are claimed. The vessel was in charge of Zetlosen & Co., of New York, who were dealt with as agents. The bill, as rendered, was originally a trifle larger, and was reduced to the sum stated by agreement with Zetlosen & Co. The vessel sailed for Europe, leaving the bill unpaid; and in about six months thereafter came to Philadelphia, where the respondents bought her. She had formerly belonged to the Copes, of this city, but had been sold and transferred to Zetlosen & Co. before the charges for which she is sued were incurred. Of this sale and transfer, however, the libelants were ignorant; and Zetlosen & Co., who had formerly had her in charge as agents, were dealt with in this character. After remaining in Philadelphia for several weeks undergoing repairs, she made a second trip to Europe and back to Philadelphia. In November, 1883, she again sailed for Europe, and on her return to Philadelphia, in July, 1884, was attached for this claim. Payment had been sought of Zetlosen & Co. promptly, but the libelants were put off from time to time with promises which were never kept. After several months of delay thus obtained, inquiries were directed respecting the vessel's itinerancy, and she was eventually discovered to be at Trieste. On her next trip to this country she was attached, as stated.

When at Jersey City she was in a foreign port, and the unpaid charge there incurred consequently became a lien.

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

There is no question of law involved. It was the libelants' duty to exercise reasonable vigilance to enforce payment. Had the vessel returned to Jersey City, and they known it, or under such circumstances that they should have known it, and been permitted to depart without payment, the lien would have been lost. While she was abroad, of course, no amount of vigilance would have accomplished anything, except to ascertain her whereabouts. The libelants were not required to follow her then. The only time when she was within reach were the two occasions when she visited Philadelphia in 1883. The libelants were ignorant of these visits; otherwise they should have attached her there. The only question therefore is, should this ignorance be ascribed to carelessness,—want of proper vigilance? This is certainly a serious question,—one about which there is room for doubt. The libelants could have ascertained the fact, of course, either by keeping a constant watch upon the vessel's movements, or upon the entries at the port of Philadelphia. Did their duty, however, require this? Is such a course, under similar conditions, customary? I think not. When all the circumstances are considered, I think the libelants must be held to a higher degree of vigilance than is usually exercised or required, to visit them with the consequences of remissness, for failing to discover these visits. Certainly they were not bound to inquire into the proposed movements of the vessel when she left their dock, nor to hunt her up while treating with her supposed agents for payment. To do this would have been unusual, and to require it would be unreasonable. They expected payment from the agents, and, as is customary and proper, first exhausted their efforts in that direction. As soon as they ascertained, or could well ascertain, that the lien must be resorted to, they sought for and found the vessel. When she next visited the country they attached her. I think no more was required. Although a good deal of time elapsed between the creation of the lien and the attachment, I am not satisfied that the libelants are blamable respecting it. While the holders of such liens should be held to a proper degree of vigilance as against innocent purchasers, unreasonable activity and haste should not be required. It must not be overlooked that the purchaser always has it within his power to protect himself by his contract.

I do not esteem it necessary to consider the question whether the respondents were guilty of negligence in the purchase; nor the question of Zetlosen's solvency. If the libelants failed to exercise proper vigilance, their lien was lost thereby, irrespective of these questions; otherwise it continues to exist. In the light of adjudicated cases, I believe, as before stated, it must be held that they did not so fail. *The Prospect,* 3 Blatchf. 526; *The Walkyrien,* 11 Blatchf. 241; *The Europa,* Brown & L. 89; *The Atlantic,* Crabbe, 440.

A decree will be entered accordingly.