## THE TIGER.

(District Court, N. D. California. December 12, 1898.)

### No. 11,426.

1. MARITIME LIENS—LACHES OF CLAIMANT—BONA FIDE PURCHASERS.

　The question as to what length of delay in proceeding to enforce a maritime lien will constitute laches and bar relief against a bona fide purchaser of the vessel is always one of fact to be determined in view of the particular facts in each case.

2. SAME—FACTS CONSIDERED.

　Where a libel to enforce a lien for work against a steam tug was not filed until 17 months after the work was performed, during 10 months of which time the tug had been out of commission, and lying in the harbor of the city where the libelant resided, such delay constituted laches which barred the libelant of relief as against an owner who purchased the tug a few days before the libel was filed, without knowledge of the claim, and knowing that the vessel had been out of service for many months, and who made inquiry of the seller as to liens before the purchase.

This is a libel in admiralty by Michael Aamadt and others against the steam tug Tiger, etc., Sanford Bennett, claimant.

John J. Coffey, for libelants.

Andros & Frank, for respondent.

DE HAVEN, District Judge. This is a suit in admiralty to enforce a lien against the steam tug Tiger for the balance due the libelant for work performed by him on board that boat as carpenter and seaman between the 17th of March, 1896, and the 18th of October of the same year. On March 15, 1898,—13 days prior to the commencement of this action,—the vessel was sold for a valuable consideration to one Bennett, who has appeared as claimant, and made answer to the libel. The defense interposed is that the lien sought to be enforced is barred by reason of the laches of the libelant in failing to take appropriate proceedings to enforce the same before the tug was purchased by, and passed into the possession of, the claimant. It appears from the evidence that for 10 months prior to the 15th of March, 1898, the Tiger was out of commission, and lying in the harbor of San Francisco, and the libelant was during the same time residing in the city of San Francisco. The claimant at the time of his purchase knew that the tug had been out of commission during the period named, and before purchasing inquired of her owners in relation to outstanding liens, and was informed by them that there were none, and he had no notice from any source of the claim of lien sought to be enforced in this action. That upon these facts the claimant must be deemed to be a bona fide purchaser without notice of libelant's asserted lien, does not admit of doubt. He knew that the tug had been out of employment for nearly a year, and was without a master, and in seeking information from the vendors the claimant did all that was reasonably required of him for the purpose of ascertaining what claims were outstanding against the tug. There was nothing whatever in the circumstances attending the transaction to suggest to a man of ordinary prudence the necessity for inquiry from any person other than the vendors. The question, then, arises whether upon these facts the libelant is now entitled to enforce his lien. I am of the opinion that he is not. The lien claimed is maritime in its nature, and such a lien cannot be enforced to the detriment of a bona fide purchaser, when the person in whose favor it exists had a reasonable opportunity to commence proceedings to enforce it before the change of ownership, and neglected to do so. The question as to what length of delay in proceeding to enforce such a lien will constitute laches is always one of fact to be determined in view of the particular facts of each case where the question arises. The Key City, 14 Wall. 653. But unreasonable delay will defeat the lien when the rights of a bona fide purchaser have intervened. Thus, in the case of The Lyndhurst, 48 Fed. 840, it was sought to enforce a lien for materials furnished about one year before the libel was filed, and more than five months after the vessel had been sold to a bona fide purchaser, and the court, in holding that the lien was lost by laches, said:

"As against a bona fide purchaser who makes all reasonable efforts to discover incumbrances, and fails to find any, such a lien, after a delay of nearly a year to take any steps to enforce it, where the vessel has been all the

time within easy reach of process, and the vendor meantime, as in this case, has become insolvent, is lost through laches. After such ample opportunity to enforce the lien, the loss should fall upon the lienor, and not on the bona fide vendee. The period of limitation of liens in admiralty, as against a bona fide purchaser, is 'a reasonable opportunity to enforce them.' "

So, also, in The Lillie Mills, 1 Spr. 307, Fed. Cas. No. 8,352, the same principle was declared in the following language:

"When the rights of third persons have intervened, the lien will be regarded as lost if the person in whose favor it existed has had a reasonable opportunity to enforce it, and has not done so. This is the well-settled rule of the admiralty. The lien for supplies has its origin in the necessities and convenience of commerce and navigation. It is for the interest of navigation and commerce that these liens should exist, and it is equally so that they should not be allowed to extend unnecessarily, to the injury of innocent third persons."

The same rule is also approved in The Utility, 1 Blatchf. & H. 218, Fed. Cas. No. 16,806; The Bristol, 11 Fed. 156, 20 Fed. 800; Nesbit v. The Amboy, 36 Fed. 926. That in this case the libelant had, during the 10 months the Tiger was lying in the harbor of San Francisco, ample opportunity to commence proceedings to enforce his lien, cannot well be disputed; and as such lien was latent, and without such action upon his part could not well be known to the public, his delay in filing this libel until after the vessel had been sold to a bona fide purchaser was at his own peril, and operates as a waiver of the lien in favor of such purchaser. The libel will be dismissed, the claimant to recover costs.