## THE MARJORIE.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1907.)

### No. 687.

1. MARITIME LIENS—LIEN FOR SUPPLIES—ENFORCEMENT AGAINST BONA FIDE PURCHASER.

A maritime lien for supplies furnished to a vessel in a foreign port will not be enforced as against a subsequent bona fide purchaser of the vessel without notice, unless it is asserted within a reasonable time under all the circumstances of the case which is largely dependent upon the opportunities for enforcement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 89.]

2. SAME—REASONABLE DILIGENCE IN ENFORCEMENT.

Libelant in April furnished a small supply of coal in the port of Norfolk to a pleasure yacht owned in Philadelphia. During the summer the yacht did not return to Norfolk, having no definite route, but visited several ports on the coast, and in July reached New York, where she remained until November, and· in the meantime was sold to a bona fide purchaser for value. Libelant wrote several letters to the owner in Philadelphia, but received no reply, and in December placed the account ·in the hands of attorneys who, after considerable search, in February found the yacht in Baltimore, where she had been taken by the new owner for the winter, and suit was at once begun. *Held*, that there was no such delay or laches under the circumstances as would defeat the lien.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 89.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore.

J. Wilson Leakin, for appellant.

Floyd Hughes, for appellee.

Before PRITCHARD, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

BRAWLEY, District Judge. The libel is for supplies of coal furnished in March, 1903, by libelants at Norfolk, Va., to the steam yacht Marjorie, of which Mrs. Hattie E. Vandergrift, of Philadelphia, Pa., was then owner. The Marjorie was a pleasure yacht, having no definite route. She sailed from Norfolk March 7, 1903, was at Charleston, S. C., April 2d, sailing thence to Hampton Roads April 24th, thence to Philadelphia May 13th, remaining there until July 1st, thence to Atlantic City, remaining there until July 10th, thence to New York, where she remained until November, when she was taken to Balti-

more and laid up for the winter. The claimant purchased her September 28th, and finding no liens recorded in Philadelphia, the port of registry, paid the full purchase money, taking a bill of sale and possession thereof. The libel was filed February 18, 1904.

It is clear from the testimony that the supplies were furnished upon the credit of the vessel, and that libelants had under the general maritime law a lien therefor, which would be an abiding lien upon the vessel in the hands of the original owner until the debt was paid, and the only question is whether it would be inequitable to enforce it against a vessel which has passed into the hands of a bona fide owner for valuable consideration without notice. As against such purchaser, the general rule is that the lien must be enforced within a reasonable time; but there is no formulary of interpretation of universal application as to what constitutes such reasonable time. It depends upon the circumstances of each case, courts of admiralty adopting the general principles which govern courts of equity in respect to what are called "stale" claims. Lapse of time, change of conditions, and opportunities of enforcement are all potent factors. The Marjorie was never at the port of Norfolk after the supplies were furnished, and it appears that during the summer of 1903 libelants wrote several letters to the husband of the then owner at Philadelphia, asking payment of the bill, to which no attention was paid, and in December the claim was placed in the hands of counsel, who after diligent search and considerable difficulty succeeded in finding the yacht in Baltimore, where she was laid up for the winter, and immediately libeled her.

Some of the older cases seem to assume that the creditor may reasonably wait for the return of the vessel to his own port, and that he was not bound to pursue her into another district to prevent his claim becoming "stale," and it has been generally held with respect to vessels engaged in commerce and trading between regular ports that the lien should be enforced as soon as the expiration of the first voyage after the materials are furnished, if there has been opportunity of so doing, unless there are circumstances which explain the delay; but these cases furnish no governing rule applicable to the case of a pleasure yacht sailing from port to port at the will of her owner. With the present facilities of communication between the ports of Norfolk, Baltimore, Philadelphia, and New York, we could not say that a party in Norfolk furnishing supplies to a vessel owned in either of the ports named could wait for an indefinite period for the return of the vessel to his own port, before taking measures for the enforcement of his lien. As such liens are not required to be made manifest by public registration, and there are frequent mutations of title in vessels of this class, the free disposal and circulation of such property would be defeated if secret liens, existing independently of possession, were allowed to continue indefinitely. It is the general interest of commerce, and the particular interest of every shipowner, that parties who furnish supplies to a vessel away from her home port, which are necessary to enable her to continue her voyage, should have a lien for the supplies. In the home port the law presumes that the owner may obtain such supplies upon his own credit, and no such lien exists except by statute. Being the outgrowth of a wholesome public policy,

there are no limitations of time for their enforcement except such as is implied by the courts in analogy to the bar which the statute interposes as to claims of similar nature, but mere lapse of time such as at law might bar a suit would not necessarily prevent a court of admiralty giving relief, if there were peculiar circumstances excusing delay which might render it inequitable to refuse it.

As commercial enterprise would be vexatiously incommoded and the free circulation and disposal of vessels prevented if such liens, which are not required by law to be made manifest by public registration, were allowed to lie dormant for an indefinite period, the courts have uniformly held, where the rights of bona fide purchasers will be injuriously affected if it is allowed to prevail, that the lien is lost if there has been long delay, and there has been reasonable opportunity to enforce it. The diligence required is usually measured by the opportunity of enforcement. In nearly all of the cases where the courts have held the lien to be lost and where there has been change of possession, there has been unreasonable delay on the part of the creditor in availing himself of the opportunities of enforcing his lien. In this case the yacht left the port of Norfolk a few days after supplies were furnished, and no want of diligence can be imputed to libelant for failing to enforce his lien at that port, for the very purpose of the law giving the lien would have been thus defeated. The coal furnished was to enable the vessel to proceed on her voyage, and it would have been inconsistent with its professed object if the yacht had been then seized. She never returned to Norfolk, but touched at several ports during the spring and summer, and meantime the libelant was endeavoring to collect the amount of his bill from the owner. There is nothing in the testimony tending to show a waiver of the lien. The yacht was sold in September while lying in New York, and shortly thereafter was put out of commission and laid up for the winter in Baltimore. No case has been cited showing how much vigilance is required in following the movements of a vessel of this character, but the sum of all the cases is that unreasonable activity and haste is not demanded, reasonable diligence is all that the law demands.

The cases cited for the appellant fall far short of showing such unreasonable delay as would bar the lien. In The John Lowe, Fed. Cas. No. 7,356, the lien claimed was for repairs to a canal boat in April, 1866. The owner lived in Albany, N. Y. The canal boat was on a ~egular route, and her location and whereabouts was well known. No effort was made to enforce the lien until August, 1867. She had in the meantime been mortgaged and sold under the mortgage and purchased by a bona fide purchaser for value without notice. During the period which intervened between the time when the supplies were furnished and the libel filed she had several times been to New Brunswick, and on one occasion at least the libelant had seen her there. In the absence of any special circumstances excusing the delay, the court held that the lien was lost.

The second case cited is that of Coburn v. Insurance Co. (C. C.) 20 Fed. 644. There the claim was for a salvage service rendered more

than nine years prior to the institution of the suit, but in the opinion there is a dictum relied upon by appellant to this effect:

"Three months time may render a claim stale as where a lien holder has stood by and permitted a ship to pass out of the hands of an innocent purchaser, while perhaps three years would not be sufficient without a change of ownership."

No case has been cited, and a somewhat exhaustive examination by us has not discovered one, where the lapse of three months' time has been held to render a claim stale. There may be circumstances where a party might be estopped by his conduct from asserting the lien, but in such case the ground of decision would be the estoppel by matter en pais, and not the lapse of time.

The next case is Norfolk Sand Company v. Owen, 115 Fed. 780, 53 C. C. A. 96, decided by this court. That was a case where the lien claimed was for repairs to a schooner in August and September of 1898. This was a domestic vessel, employed at all times in and about the waters of her home port, where the libelant lived, and was claimed under the Virginia statute. She was sold to a bona fide purchaser in November, 1899, without notice of this lien. The libel was filed in January, 1900, and this court held, in accordance with the uniform current of decisions, that as against the innocent purchaser the lien was lost, there being a delay of nearly 18 months, with abundant opportunities of enforcing it. It also held that the libelant had a valid lien for the work done in July, 1899, about six months prior to the filing of the libel. The lien claimed being anterior in date to the title of the purchaser, must prevail unless some superior equity is shown. A bona fide purchaser for full value without notice stands upon high ground, but as there is no law requiring a lien of this kind to be recorded, and no place where it could be registered, libelant cannot be made to suffer unless by his conduct and laches it is extinguished. Ordinary prudence should have suggested to the purchaser that he withhold a part of the purchase money or take a bond of indemnity from the vendor to protect him against claims of this nature. While secret liens generally are abhorrent, it is so well settled that all vessels plying upon the ocean or Great Lakes are subject to them, that purchasers of this kind of property should protect themselves against them.

The state of the law may be seen in the following cases, where liens were sustained as against bona fide purchasers: In The Atlantic, Fed. Cas. No. 2,976, two years unaccompanied by culpable neglect was held not to bar. In The Chusan, Fed. Cas. No. 2,717, Justice Story held that the lien was not lost after lapse of more than a year after materials were furnished. In The Prospect, Fed. Cas. No. 11,443, the lien was sustained after a long lapse of time, the vessel having been continuously absent, and prompt procedure upon her return. In The Walkyrien, Fed. Cas. No. 17,092, lien sustained about two years after supplies were furnished, the ship having been absent from the port. In The Tonawanda (D. C.) 27 Fed. 575, lien for wharfage and supplies sustained about two years and six months after they were furnished. In The Alaska (C. C.) 33 Fed. 107, libel for damages for collision, it

was held that in the circumstances a delay of more than 11 months in filing the libel was not so unreasonable as to defeat the lien, although the offending vessel had made 10 round trips to the port where the collision occurred.

On the Great Lakes the general rule seems to be that a delay of one year is not so unreasonable as to defeat the lien. The Dubuque, Fed. Cas. No. 4,110; The Buckeye, Fed. Cas. No. 13,445, where liens for wages and materials furnished were held to have been forfeited by delay of three years, there being frequent opportunities of enforcing them. · In The General Jackson, Fed. Cas. No. 5,314, the lien was denied after 18 months, there having been constant opportunity to enforce it.

In the following cases the lien was barred as against a bona fide purchaser after two years' delay: The Lillie Mills, Fed. Cas. No. 8,352; The Admiral, Fed. Cas. No. 84; The Utility, Fed. Cas. No. 16,806; The Lauretta (D. C.) 9 Fed. 622; The C. N. Johnson (D. C.) 19 Fed. 782; The Angler (D. C.) 83 Fed. 845.

In The Asher W. Parker, 84 Fed. 832, 28 C. C. A. 224, and The Tiger (D. C.) 90 Fed. 826, liens for work done and for supplies were barred as against innocent purchasers after 18 months. In these cases the ground of decision was that parties claiming the lien had had frequent opportunities of enforcing it, and therefore it was held inequitable to sustain it to the prejudice of an innocent purchaser. In The Rebecca, Fed. Cas. No. 11,619, a delay of 9 months was held not too long a time even against a vessel in her home port, and in The Mary, Fed. Cas. No. 9,186, a lien for wages was not lost by a delay of 12 months.

In the case under consideration the libel was filed within less than a year. The yacht had been sailing from port to port, and never came within the jurisdiction of the port where the supplies were furnished. The claim was a small one and hardly justified the employment of a detective to follow her wanderings. The lien was asserted as soon as the yacht was found. It may be that by extraordinary vigilance she might have been discovered a few weeks or a few months earlier, but she was a small vessel and would easily escape notice in the port of New York, where she was at the time of the sale, amidst the thousands of craft lying in and about that harbor. The law is well settled that liens of this nature must be sustained if there has been reasonable diligence in asserting them. A long line of decisions shows that a delay of a year in circumstances such as are disclosed by the testimony is not unreasonable, and to lay down any other rule would tend to unsettle the law and to disturb the credit which in the interest of commerce must be extended to ships for supplies when away from their home ports to enable them to continue their voyages, a credit only given upon the faith that they have a lien upon the ship.

The decree of the court below is affirmed.