## THE SATURNUS.

### (District Court, S. D. New York. April 24, 1917.)

1. SHIPPING ⬤⇒104—LIABILITY OF VESSEL—LIEN FOR BREACH OF CONTRACT.
   The maritime law does not give a lien on a vessel for an alleged breach of contract by failing to proceed to the designated berth for loading, and this general proposition is not different in the event that the cargo is later loaded on the vessel at another place.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 404–410.]

2. MARITIME LIENS ⬤⇒57—LOCAL STATUTES—ENFORCEMENT IN ADMIRALTY.
   Courts of admiralty are not inclined to recognize local statutes purporting to establish a lien, where the maritime law gives none, unless the right is unequivocal.

   [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 96.]

In Admiralty. Suit by the Midland Linseed Products Company against the steamship Saturnus. On exceptions to libel. Exceptions sustained.

Everett, Clarke & Benedict, of New York City, for libelant.

Burlingham, Montgomery & Beecher, of New York City (Chauncey Belknap, of New York City, of counsel), for claimant.

MAYER, District Judge. Libelant sues in rem to recover $1,287 as damages for breach of a contract of affreightment by the steamship Saturnus, the amount in question representing the cost of lighterage and towage of a cargo of linseed cake from Edgewater, N. J., to Erie Basin.

Libelant had an agreement with one Schilperoorot and one Folkers, for the sale of 16,000 tons of linseed cake f. o. b. vessels New York, payment in New York against full set of ocean bills of lading. It was provided that the Holland government should tender steamers to libelant to load cargoes according to the terms of the Baltimore charter party, Form C, with certain exceptions as to demurrage. It is alleged that, under this charter party and the general custom of the port of New York, it was the duty of any steamer so tendered to proceed to any proper berth designated by libelant.

On February 14, 1917, the agents of the Saturnus advised libelant that the steamship was tendered for cargo under the terms of the above referred to agreement, and libelant thereupon duly designated its pier at Edgewater as the berth for loading. It is alleged that the steamship wrongfully and negligently refused to proceed to that berth, and that libelant thereupon, under protest, lightered the cargo to Erie Basin and loaded it on board of the steamship there, receiving bills of lading therefor from the master. The claimant of the Saturnus has excepted to the libel on the following grounds:

"First. It appears from the libel that the damages claimed by libelant arose from the alleged breach of a contract for the sale of the goods, which is not an admiralty and maritime cause of action and is not within the jurisdiction of this honorable court.

"Second. The breach of contract alleged in the libel does not give a maritime or other lien against the S. S. Saturnus."

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The first ground presents an interesting question as to whether the agreement to tender ships is separable from the rest of the contract, and, if so, whether it is a maritime contract within the jurisdiction of this court. That question may be passed by because the case may be disposed of on the second ground of exception.

[1] I am of opinion that the general maritime law does not give a lien on a vessel for the alleged breach of contract by failing to proceed to the designated berth for loading, and that this general proposition is not different in the event that the cargo is later loaded on the vessel as in the case at bar. It is undoubtedly the law that no right in rem exists where the contract remains wholly executory. An instructive opinion to this effect is that of Judge Brown in Scott v. The Ira Chaffee (D. C.) 2 Fed. 401, and this was soon followed by Judge Addison Brown in The Monte A. (D. C.) 12 Fed. 331. See, also, The Eugene (D. C.) 83 Fed. 222; The Margaretha, 167 Fed. 794, 93 C. C. A. 184.

I am unable to see that the later loading of the cargo affects the rights of the parties or the remedies as between them, as those rights or remedies existed at the time of the breach complained of. There are apparently but two cases in support of libelant's contention in this regard, and they are The J. C. Stevenson (D. C.) 17 Fed. 540, and Hoadley v. The Lizzie (C. C.) 39 Fed. 45. Per contra are The General Sheridan, 10 Fed. Cas. No. 5,319, The Hiram (D. C.) 101 Fed. 138, and The Ask (D. C.) 196 Fed. 165.

Libelant correctly states that the court must choose between these different points of view. I have no hesitation in following The Hiram, which I think essentially is the same as Scott v. The Ira Chaffee, supra, or, in any event, merely an extension of the principles laid down by Judge Brown; and these seem to me to more fully accord with the doctrines of maritime law, which do not favor the binding of the res as between cargo and vessel until the vessel and the cargo are reciprocally bound by the presence of the cargo on the vessel.

[2] Finally, libelant contends that it is entitled to a lien on the vessel under the New York Lien Law, Consol. Laws, c. 33 (Laws 1909, c. 38) § 80. In the first place, courts of admiralty are not inclined to recognize local statutes purporting to establish a lien where the maritime law gives none, unless the right is unequivocal. The purpose of the New York statute is to provide a security to persons rendering service to a vessel in reliance upon the promise of compensation contracted for by the master, owner, charterer, builder, or consignee of the vessel, etc. This is not such a case.

The libel, therefore, must be dismissed, with costs, and, in order to avoid any technical question, should the case be appealed, the libelant may amend by annexing as exhibits copies of the bill of lading, the sales agreement, and the Baltimore charter party, Form C.