## THE U. & I.

### (District Court, D. Maine, S. D. January 7, 1924.)

#### No. 885.

1. **Maritime liens ⊂⊃47, 61—Follow the ship, and delay, to constitute laches and bar enforcement of lien, varies with circumstances.**

A maritime lien once attaching to a ship follows the ship into the hands of a purchaser, unless it is lost by laches of the lienor in enforcing it, and the time before laches will bar the claim differs with the circumstances of the case. Where the rights of third parties intervene the time is shorter than where rights of the original parties only are involved.

2. **Maritime liens ⊂⊃61—Laches determined on general principles of equity.**

Questions of laches in the enforcement of liens must be decided on general principles of equity and fair dealing.

3. **Maritime liens ⊂⊃61—Account for supplies furnished to fishing boat held running account, though no entries were made during winter time.**

An account for oil and gasoline furnished a motor fishing boat *held* a running account, though no charges were entered during the winter months, when the boat was not in use, but they were resumed in the Spring.

4. **Maritime liens ⊂⊃61—Furnishers of supplies held not to have lost their lien by laches.**

Furnishers of supplies to a fishing boat *held* not to have lost their right to a lien by delay in bringing suit, as against a purchaser without notice, who had given notes for part of the purchase money, and who did not show that he would suffer loss by payment of the liens.

In Admiralty. Suit by the Little & Coffin Oil Company against the Motorboat U. & I.; the Harris Company intervening. Decree for libelant and intervener.

Nathan W. Thompson (of Thompson, Hoague & Hill), of Portland, Me., for libelant and intervener.

Gerry L. Brooks, of Portland, Me., for claimant.

HALE, District Judge. This libel is brought against a small fishing vessel, the motorboat U. & I., to recover for supplies furnished on the orders of the master and owner, and to enforce a maritime lien on the vessel for such supplies. The Harris Company intervenes, also, to recover for similar supplies so furnished, and to enforce its lien. The claimant makes a general denial, and alleges that he is now owner of the motorboat; that both the libelant and intervener have lost their liens by reason of laches; that the boat has been sold between the time the supplies were furnished and the time of filing the libel; and that the present holder is a purchaser of the boat without notice of the liens.

1. The proofs show that the libelant and intervener furnished the supplies stated in the libel and petition to intervene. The claimant pleads payment, but has failed to prove payment by satisfactory affirmative testimony. The books, together with the testimony, afford persuasive proof that no payment has been made.

2. The claimant alleges that the libelant and intervener have waived their rights to a lien by failure to enforce them within a reasonable

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

time and until after the claimant, an innocent purchaser, had bought and paid for the boat, without knowledge of the lien.

The claimant purchased the boat on August 23, 1923. The libel was brought on September 21, 1923. The libelant's account was a running account, for gasoline and oil furnished to the boat from July 2, 1922, to April 4, 1923. The proofs show that the vessel was fishing out of the port of Portland during the months of July, August, September, and October, 1922; that she went to Plymouth the last of October, 1922, and came back to Portland the latter part of December, and remained tied up at Portland most of the time until July, 1923.

Claimant urges that, after many conferences with the managing owner, and after making reasonable inquiry in an effort to ascertain whether or not the vessel was free from lien claims, he purchased the vessel; that upon the advice of counsel he took possession of her in July, 1923, and operated her under a contract of sale; and that on August 23d, having failed to discover any liens, and relying upon the assurance of the managing owner that there were no lien claims against the vessel, he completed the purchase, paying to the owner the full value of the same. It appears that he paid part in cash and part in notes on time.

The libelant and intervener say that they did not know of any sale, and that if they had been informed of it they would have taken earlier proceedings, or would have notified the purchaser; but that they acted in good faith and made no unreasonable delay.

[1] A maritime lien, once attaching to a ship, from its nature, follows the ship into the hands of a purchaser, unless it is lost by laches of the lienor in enforcing his lien. The time expiring, before laches will bar a claim, differs according to the circumstances of each case. Where the interest of third parties intervenes, the time is shorter than in cases where there is involved only the rights of the owner at the time of the attachment of the lien. It is the duty of the court to make careful scrutiny of all the circumstances relating to the character of the delay. The Marjorie, 151 Fed. 183, 80 C. C. A. 551; J. W. Scott (D. C.) 289 Fed. 495, 497; The Mee Too (D. C.) 280 Fed. 407; The Algonquin (D. C.) 88 Fed. 318; The Tiger (D. C.) 90 Fed. 826; Norfolk Sand & Cement Co. v. Owen, 115 Fed. 778, 53 C. C. A. 96.

[2] Questions of laches must be decided on general principles of equity and fair dealing. For a general statement of the law on this subject, see cases of Judge Addison Brown: The Martino Cilento (D. C.) 22 Fed. 859, 861; The Columbia (D. C.) 27 Fed. 704, 720; The Carver (D. C.) 35 Fed. 665; The Bristol (D. C.) 11 Fed. 156, and (C. C.) 20 Fed. 800.

[3, 4] In the case at bar the proofs show that neither the libelant nor the intervener had knowledge of any sale of the boat. The libelant brought suit after it was supposed that a reasonable opportunity had been given for the owner to pay the bill, following the custom of giving fishermen a fair chance to pay, before taking any steps to collect. From October, 1922, until March, 1923, the libelant's books show no charges against the motorboat; it appearing that the oil and gasoline had been furnished at the time the boat was in use, and not during the

winter months. Under the circumstances, I think the account of the libelant must be taken as a whole, and as a running account, and should not be divided into two accounts as urged by the claimant. It appears that the whole purchase price of the boat was not paid in cash, but that part of it—apparently a larger part than the amount sued for—was paid by notes; and it does not appear that the notes have been transferred to innocent holders, or that the claimant has actually suffered from the delay, the burden being upon the claimant on this issue. While an account may be paid by notes, it is the duty of a court in admiralty to look into a transaction deeper than to find merely whether a payment by notes has been given. It does not appear, in the case at bar, that the notes have been paid by the claimant, or that he will not be able to deduct from the amounts of the notes the amount sued for by the libelant and the intervener. I think he has not met the burden of showing that he has suffered by an unreasonable delay in bringing a suit.

The intervener allowed a greater lapse of time, in the enforcing of its claim, than the libelant. I am constrained to hold, however, in case of both the libelant and intervener, that their claims may be allowed as stated in the libel, and that they have not lost their right to enforce their liens by unreasonable delay in their enforcement.

A decree may be entered in favor of the libelant and the intervener, declaring a maritime lien to exist, in favor of each, for the amount set out in the libel and in the intervention, with costs.