## THE COMMACK.

## ATLANTIC & SOUTHERN NAV. CO. v. CENTRAL WHARF TOWBOAT CO. et al.

(Circuit Court of Appeals, First Circuit. June 12, 1924.)

No. 1742.

**1. Admiralty ⊜➝118—Finding of amount due for towage and supplies not reviewed, in absence of evidence on which finding based.**

On libel in rem for towage and supplies, assignment of error to finding of amount due could not be considered, where court found towage and supplies were rendered in amount stated, and that prices charged were fair and reasonable, and evidence on which findings were based was not before appellate court.

**2. Admiralty ⊜➝109—Assignment of error held too general.**

Assignment of error on ground libel and intervening petition should have been dismissed, and for failing to find for claimant, *held* too general to merit consideration.

**3. Maritime liens ⊜➝25—Furnishing necessary supplies and services on captain's order and on credit of vessel held to give lien.**

Requirements for maritime lien, under Act June 5, 1920, § 30 (Comp. St. Ann. Supp. 1923, § 8146¼ooo et seq.), were met by finding services and supplies were furnished on captain's order and on credit of vessel, and were necessary.

**4. Maritime liens ⊜➝65—That bills rendered to vessel's former agent held insufficient to show waiver of liens.**

Mere fact libelant and intervening petitioner rendered bills for services and supplies to former agent of vessel *held* insufficient to show maritime liens were waived.

**5. Maritime liens ⊜➝61—Finding lien not lost by delay in failing to file libel for 10 months held warranted.**

Where vessel did not return to place where services and supplies were furnished, nor to her home port, for 10 months, and during this time her whereabouts were unknown to persons furnishing services and supplies, and libel was filed shortly after vessel returned to home port, finding maritime liens were not lost by laches *held* justified.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Libel in rem by the Central Wharf Towboat Company and others against the schooner Commack, claimed by the Atlantic & Southern Navigation Company, in which the W. S. Jordan Company intervened. From a decree for libelant and intervener, claimant appeals. Affirmed.

Arthur V. Harper, of Boston, Mass., for appellant.

Theodore Hoague, of Boston, Mass. (Thompson, Hoague & Hill, of Portland, Me., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a libel in rem, brought in the federal court for the District of Massachusetts on January 31, 1923, by the Central Wharf Towboat Company, a Maine corporation, against the schooner Commack, to recover for towage services amounting to $261, rendered the schooner while in the port of Portland; the last

towage service being March 21, 1922. On February 8, 1923, W. S. Jordan Company, a Maine corporation, engaged in the ship chandlery and supply business at Portland, filed an intervening petition to recover for supplies furnished the schooner at Portland between March 11 and March 23, 1922, amounting in all to $191.42. The Atlantic & Southern Navigation Company appeared as claimant, setting out that on or about the 18th of May, 1922, it purchased for a valuable consideration $33/64$ of the schooner; that it made diligent inquiry as to whether any bills were due from said boat, and that at the time of the purchase it was unaware of these claims; that the libelant and petitioner had been guilty of laches, and that the services and supplies were not furnished upon the credit of the vessel.

The evidence introduced at the trial is not before us; the case is here on facts found by the District Court.

The libelant and petitioner are engaged in business at Portland, Me. The home port of the schooner is Boston, Mass. The District Court has found that the libelant and petitioner rendered the services and furnished the supplies in question; that the prices charged are fair and reasonable, and have not been paid; that the schooner left Portland shortly after March 23, 1922, and did not return to that port prior to the filing of the libel (January 31, 1923), and did not return to Boston until some time in January, 1923; that on or about May 15, 1922, she was at Calais, Me., and discharged a cargo; that during the greater part of the intervening time she was in the South, engaged in trade between Southern ports; that the libelant and petitioner had no knowledge of the schooner's whereabouts until just prior to the filing of the libel, which was shortly after her arrival at Boston; that at the time the towage services were rendered and supplies furnished neither the libelant nor the petitioner knew who the owners of the schooner were, and had no knowledge of the claimant's purchase of $33/64$ of the schooner until shortly before the filing of the libel; that both of them rendered bills to O. A. Gilbert, the former agent of the vessel at Boston, but that neither of them ever intentionally waived its lien.

On the foregoing facts the District Court found and ruled that the liens had been asserted with reasonable diligence and were not barred by laches, and entered a decree that the libelant recover the sum of $261 and costs, and the petitioner the sum of $191.42 and costs.

It is from this decree that the claimant appeals, and in its assignments of error complains that the court erred (1) in finding that the sum of $261 was due the libelant and $191.42 the petitioner; (2) in failing to dismiss the libel and intervening petition, and in failing to find for the claimant in both proceedings; (3) in failing to rule and find that both the libelant and petitioner were guilty of laches; and (4) in failing to rule and find that they lost their rights to maritime liens by reason of delay in prosecuting their claims.

[1] The District Court having found that towage services and supplies were rendered and received in the amounts above stated, and that the prices charged were fair and reasonable, the first assignment of error presents no question for our consideration, either of fact or law; the evidence upon which these findings are based not being before us.

[2-4] The second assignment is too general to merit consideration. It fails to state a definite ground of complaint. If by it it was intended to raise the question whether these claims constitute maritime liens, the answer is that the District Court has found that the services and supplies were rendered and furnished upon the order of the captain and upon the credit of the vessel while she was in the port of Portland, and were necessary to enable her to prosecute her voyage, and such being the case the requirements of the statute for a maritime lien are met. Act June 5, 1920, 41 Stat. 1005, c. 250, § 30 (Comp. St. Ann. Supp. 1923, § 8146¼ooo et seq.). Then, if it was intended to test the question of waiver, we think that question is concluded by the finding that the libelant and petitioner never intentionally waived their liens. The mere fact that they rendered bills to the former agent of the vessel does not prove that the finding that they had not waived was unwarranted.

[5] The only remaining question is whether the liens were lost through laches.

In The Marjorie, 151 Fed. 183, 184, 80 C. C. A. 551, 552, the court said:

"It is clear from the testimony that the supplies were furnished upon the credit of the vessel, and that libelants had under the general maritime law a lien therefor, which would be an abiding lien upon the vessel in the hands of the original owner until the debt was paid, and the only question is whether it would be inequitable to enforce it against a vessel which has passed into the hands of a bona fide owner for valuable consideration without notice. As against such purchaser, the general rule is that the lien must be enforced within a reasonable time; but there is no formulary of interpretation of universal application as to what constitutes such reasonable time. It depends upon the circumstances of each case, courts of admiralty adopting the general principles which govern courts of equity in respect to what are called 'stale' claims. Lapse of time, change of conditions, and opportunities of enforcement are all potent factors."

It is there pointed out that a maritime lien must be enforced within a reasonable time, a reasonable opportunity for doing so having been afforded; that mere lapse of time will not bar the lien; that there must be other circumstances making it inequitable to enforce it.

In the case now before us it appears that about 10 months had elapsed after the services were rendered and the supplies were furnished before the libel was brought; that during that period the schooner did not return to the port of Portland, or to her home port; and that her whereabouts until after she entered her home port, just before the libel was filed, was unknown to the libelant and petitioner. Under these circumstances we think the District Court was right in concluding that the liens had not been lost through laches; we surely cannot say that it was clearly wrong in so concluding.

The decree of the District Court is affirmed, with costs to the appellee.