## THE LAKEPORT.

(District Court, W. D. New York. April 27, 1926.)

1. Seamen ⊜⟹27.

Seamen, seeking recovery on contract of employment, are entitled to maritime lien for wages under Act June 5, 1920, § 30, subsec. P (Comp. St. § 8146¼ooo).

2. Seamen ⊜⟹26.

Seamen's omission to file libel until after sale of vessel *held* not to constitute laches, in view of owner's promise of full payment on sale of steamer.

3. Seamen ⊜⟹27.

Purchaser of vessel is put on inquiry as to existing liens or claims for seamen's wages, especially as no statute of limitations bars recovery.

4. Seamen ⊜⟹27.

Failure to record bill of sale of vessel under Comp. St. § 7778, may be considered in determining equities between purchaser and seamen filing libel in rem for wages after sale.

5. Maritime liens ⊜⟹47.

Maritime lien, once attached to ship, follows it into custody of purchaser, unless laches bars recovery.

In Admiralty. Libel by William Harris against the steamer Lakeport, her engines, boilers, boats, tackle, apparel, and furniture, claimed by the Lakes & St. Lawrence Transit Company. Decree for libelant.

John J. Brown, of Buffalo, N. Y. (Irving W. Cole, of Buffalo, N. Y., of counsel), for libelant.

Stanley & Gidley, of Buffalo, N. Y., for claimant.

HAZEL, District Judge. Originally this proceeding in rem was against three vessels, but later the libel was amended and continued as against the steamer Lakeport alone, which, at the time of the employment in question, was owned by the Lakes & St. Lawrence Transit Company. The basis of the libel is to recover seamen's wage for an unexpired term during the 1923 season of navigation. It includes assigned claims to libelant, who was assistant engineer, of George R. Vosburgh, chief engineer, and Joseph Ashby, assistant engineer. The evidence shows that wages for the time actually spent by libelant and assignors on board the Lakeport were actually paid, but that when the steamer was tied up on December 14, 1923, and libelants released from their actual work, there remained a period under the term of employment for which their services would have continued, had the steamer not laid up. The employment (see Exhibit 1) dated May 26, 1923, was for the monthly payment therein specified for a period of 10 months. It was customary to employ marine engineers at this port for the season of navigation lasting 10 months, and to pay them in monthly installments, and the contract of employment so provides.

Payments were made for the services ending December 14, 1923, a period of less than 9 months, leaving a balance unpaid of something more than a month. Although demands for payment of the balance were made of the captain of the steamer, and afterwards of the manager and agent, before the sale to claimant, a few weeks before April 28, 1925, when the bill of sale was filed in the customs office, as required by the statute, nothing was done by libelants to enforce payment until the lapse of one year and three months, or until after the sale of the steamer to the claimant. It is contended that the claimant had no knowledge or notice of the asserted liens of any balance unpaid libelant.

[1] The first question submitted is whether a maritime lien exists. It is argued that under the Act of June 5th, 1920, § 30, subsec. P (Comp. St. § 8146¼ooo), no lien was created for breach of contract of employment. The statute, however, after specifying that persons furnishing supplies have a maritime lien against the vessel, includes the term "or other necessaries," which, of course, is broad enough to give a maritime lien for seaman's wages. I am unable to accept the view that, since it is sought to recover on a contract of employment, no maritime lien eventuated. The terms of employment, fairly interpreted, were to compensate libelant and assignors for 10 months' work—i. e., during the season of navigation—at the stated wage for 10 months, to be paid in monthly installments. The decision of the Circuit Court of Appeals in The Saturnus (D. C.) 242 F. 173 (aff'd, 250 F. 407, 162 C. C. A. 477, 3 A. L. R. 1187), has no application to maritime liens for seaman's wages, or to an agreement as to the wage to be paid and period of employment.

[2-5] It is next contended that libelant's claim is barred because of laches arising from failure to prosecute earlier. The theory advanced is that it is quite inequitable to compel claimant to pay for the unexpired term of employment under an arrangement made by a preceding owner of which claimant had no notice. The solution of this point depends upon the facts and circumstances. The evidence shows that, not only was demand made on the captain of the steamer, who represented the owner, for the 10 months specified in the terms of employment, but demand was also made several times by libelant and Vos-

burgh on the manager and agent of the steamer, who promised full payment on sale of the steamer. Bill or statement of the demand was forwarded immediately after the steamer was laid up for the season, and promises to pay were made. The claims were not disputed at any time.

I am of the opinion that omission to file the libel earlier does not constitute laches, when the owner lulls a claimant to refrain from prosecution by promise of payment on sale of the vessel. Delay to prosecute, under such circumstances, is not without justification. The claimant was fairly put on inquiry as to existing liens or claims for seamen's wages, especially as no statute of limitations bars recovery. I do not recall that any inquiries of the transferor of the vessel, as to any liens against her, were made by the purchaser. The bill of sale was filed or recorded on April 28, 1925, 15 days after the vessel was seized herein, though several weeks had elapsed since the sale.

Section 7778, U. S. Comp. St. 1916, substantially provides that no bill of sale shall be valid against any person other than grantor or mortgagor and persons having actual notice thereof, unless the bill of sale is filed with the collector of customs where the vessel is registered or enrolled. This provision was, no doubt, for the protection of subsequent purchasers and mortgagees; but the seizure of the vessel occurred before the bill of sale was recorded as required by law. It is true, as stated by Judge Ward in The Augustine (D. C.) 8 F.(2d) 287, that a ship passes by delivery on sale and confers title; but failure to record promptly is an incident that may be considered in determining the equities, for it is well established that a maritime lien, once attaching to the ship, follows the ship into the custody of a purchaser, unless laches bars recovery, and the existence of laches depends upon the circumstances of the case. There is no hard and fast rule, except that as to an innocent purchaser the time is shorter than it would be against the original parties. The U & I (D. C.) 294 F. 985.

There are adjudications holding that a year's delay barred a claim for seamen's wages as against a purchaser without knowledge or notice; but in those cases I discover no equities arising from frequent promises of the owner of the vessel to pay as soon as the vessel was sold, and by such promises obviously deferring prosecution. The present owner, no doubt, is put to a disadvantage; but it seems to me that he, and not libelant, in fairness must look for relief to the vendor.

Libelant is entitled to a decree, with costs, for the recovery of the respective balances unpaid on the liens in question. So ordered.