94 F.2d 7 (1938)
In re MARINE TRANSIT CORPORATION.
SOCONY-VACUUM OIL CO., Inc.,
v.
IRVING TRUST CO.
No. 158.
Circuit Court of Appeals, Second Circuit.
January 10, 1938.
*8 Louis Mead Treadwell, of New York City (Bernard J. Thole, of New York City, of counsel), for appellant.
McManus, Ernst & Ernst, of New York City (Lester D. Melzer, of New York City, of counsel), for appellee.
Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
SWAN, Circuit Judge.
Upon its voluntary petition Marine Transit Corporation was adjudicated bankrupt March 21, 1934. Within six months thereafter Socony Vacuum Oil Company, the appellant, filed its proof of claim in the amount of $3,989.29 for fuel oils supplied to vessels of the bankrupt during the last three months of the year 1932. Although the supplies were furnished by a predecessor of the appellant, the legal situation is the same as though the appellant itself had supplied them, and we need not hereafter differentiate between the two. Concededly the circumstances were such as to create in favor of the appellant a maritime lien upon each of the several vessels supplied with fuel oil for the price of the oil received by it. 46 U.S.C.A. § 971. The proof of claim alleged the existence of such liens and expressly reserved them. Thereafter the bankrupt's fleet was sold free of liens by order of the court of bankruptcy. The present proceeding sought to impose the liens upon the proceeds of such sale. Before the referee the trustee in bankruptcy contended that the liens were lost by laches and by waiver. After hearings the referee held that the amount of $3,132.37 of the appellant's claim represented bills against vessels whose sale created the fund in court; and he allowed the claim in this amount as a lien claim and allowed the balance of $856.92 as a general claim. Upon petition for review filed by the trustee in bankruptcy, the District Court ruled that the appellant had waived the maritime liens originally acquired. Accordingly the referee's order was modified to allow the entire claim as a general claim only. This appeal asks reinstatement of the referee's order.
The District Court based its finding of waiver upon the following facts: The bankrupt and National Motorship Corporation were affiliated in some manner not disclosed; each was indebted to the appellant, the bankrupt for $3,989.29 as already stated, and the Motorship Corporation for $5,183.52. By agreement dated March 10, 1933, Standard-Vacuum Transportation Company, an affiliate of the appellant, chartered for the term of one year a Diesel lighter owned by National Motorship Corporation at an agreed hire of $75 per five-day week to be paid to the fuel oil department of the appellant and by it applied in reduction of the indebtedness of the Motorship Corporation. There was an oral understanding with Mr. Palmer as representative of the bankrupt and its affiliate that after the Motorship Corporation's debt was paid the arrangement would be continued to pay the bankrupt's debt. Shortly thereafter, as the result of a conversation had by the bookkeeper of the bankrupt and the Motorship Corporation with the credit manager of the appellant, the ledger sheets of the appellant were changed to reflect the two accounts as a consolidated indebtedness due from the Motorship Corporation. Payments of charter hire were credited against this consolidated indebtedness. In July, 1934, the appellant was informed by equity receivers appointed for the Motorship Corporation in April of that year that it would not be allowed to apply any of the charter hire against the debt of the bankrupt. In September, 1934, the appellant's proof of claim was filed against the bankrupt, with a reservation of liens. The appellant did not, however, rewrite its ledger sheets to reinstate *9 the two separate accounts which composed the consolidated indebtedness until the following April when the chartered lighter was surrendered to the equity receivers of its owner, the indebtedness of the Motorship Corporation having been paid in full by application of the charter hire. No charter hire was applied in reduction of the bankrupt's original indebtedness of $3,989.29.
The trustee in bankruptcy argues  somewhat inconsistently in view of the fact that it took no appeal from allowance of the claim  that, when the appellant changed its books to show only the consolidated indebtedness, the debt of the bankrupt was extinguished. This could only be if there was a novation. The evidence is insufficient to establish a novation. Consolidation of the accounts was done after a talk between the credit manager of the appellant and the bookkeeper of the bankrupt and its affiliate, who said that the Motorship Corporation had absorbed all the assets and liabilities of Marine Transit Corporation and any indebtedness of the latter was to be charged to the account of the former. What he said was apparently a mistake, for the assets of Marine Transit Corporation came into the custody of its trustee in bankruptcy and the receivers of the Motorship Corporation denied any liability for the bankrupt's indebtedness. The District Court found against a novation, for it held that the bankrupt was not released from its debt and allowed the appellant's claim as a general claim.
Since there was no novation, we cannot see in the charter arrangement of March 10, 1933, supplemented by the oral understanding with Mr. Palmer, any evidence of an intent to waive the appellant's liens. In considering the question of waiver, there is a wide difference between taking a security at the time the supplies are furnished to the vessel and taking one thereafter.[1] In the first situation insistence upon a security may indicate that the credit of the vessel was not relied upon; and without such reliance no lien arises. W. A. Marshall & Co. v. The S. S. President Arthur, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846. As that case shows, the facts are strictly construed to imply a "waiver" of lien in the first situation. But there is much less ground for implying a waiver in the second situation, that is, after a lien has once been acquired. The maritime lien is a proprietary right in the vessel itself and is distinct from the personal liability of the owner. The taking of a security for performance of the owner's personal obligation should not be construed as evidencing an intention to relinquish the existing lien on the vessel unless such intention clearly appears. In The James T. Easton, 49 F. 656, D.C.E.D.N.Y., Judge Brown held that the taking of the note of a third person, when it is taken for an antecedent debt, is no discharge of the maritime lien of the person receiving it. He relies upon cases establishing the rule obtaining in New York and many other states that when the note is received at the time of contracting the debt there is a presumption that it was taken in payment, but when it is received for a pre-existing debt the presumption is just the reverse. Noel v. Murray, 13 N.Y. 167; Hall v. Stevens, 116 N.Y. 201, 22 N.E. 374, 5 L.R.A. 802; Atlas S. S. Co. v. Colombian Land Co., 2 Cir., 102 F. 358. See, also, The Hattie Thomas, 2 Cir., 262 F. 943, 945; Robins Dry Dock & Repair Co. v. Chesbrough, 1 Cir., 216 F. 121, 125. In the case at bar we think the evidence points only to providing a means of payment of the debt. Palmer's letter of January 7, 1933, stated that both the bankrupt and the Motorship Corporation were short of funds and proposed that payment of their debts to the appellant should be made either by sale of the Diesel lighter to the appellant or by arranging a charter on terms similar to those finally concluded in the charter agreement of March 10, 1933. It cannot justifiably be inferred that by accepting this method of payment the appellant intended to forego the security of its lien. It was not even a binding extension of time for payment of the indebtedness, since the charterer had the power of terminating the charter on 24 hours' notice. In our opinion, the court erred in finding a waiver of the liens.
Finally, the trustee urges that the liens were lost by laches in asserting them, under the doctrine of The Owyhee, 2 Cir., 66 F.2d 399, that a lienholder must justify any delay beyond the one-year period prescribed by the New York statute. Lien Law N. Y., Consol. Laws, c. 33, § 83. This point was decided in favor of the appellant by the referee and was not passed upon by the District Court. The last delivery of oil was made December 8, 1932; hence the appellant *10 must excuse his delay from December 8, 1933, to March 21, 1934, when the adjudication in bankruptcy occurred, excusing enforcement thereafter in view of the claim filed in the bankruptcy proceedings. We think an adequate excuse is to be found in the charter agreement under which the appellant had reason to suppose that the consolidated indebtedness was gradually being reduced and would ultimately be paid in full if the charter were extended as orally understood. When it was learned in July, 1934, that the charter hire could not be used to reduce the bankrupt's debt, the appellant, within due time, filed its claim in the bankruptcy proceeding. In The Alabama, 5 Cir., 242 F. 431, 433, it is said that "A party with a cause of action against a ship should not be penalized for undertaking to settle his claim amicably." See, also, The John Dillon, 46 F. 527, D.C.D.N.J.; The Lakeport, 15 F.2d 575, D.C.W.D.N.Y. Where an owner and a lienholder have come to an amicable arrangement for payment of an undisputed lien claim, we think failure to litigate the lien should be excused so long as the arrangement is being carried out. To hold the opposite would be an unwise policy, injurious alike to vessel owner and lienholder. There is nothing to the contrary in The Owyhee, supra, for there no agreement had been reached and efforts to obtain payment had been unsuccessful. Consequently, we think the referee was right in holding that the liens were not lost by laches, and his order should be reinstated. The order appealed from is modified accordingly.
NOTES
[1] Chief Justice Taney did not recognize such difference in Phelps v. The Camilla, 19 Fed.Cas. pp. 441, 445, No. 11,073, but his remarks were not essential to the decision.