## The Robert Gaskin

*(District Court, E. D. Michigan.    January 31, 1881.)*

1. ADMIRALTY—LACHES.
    Where libellant suffered over six years to elapse before filing his libel, the vessel having been within the district several times, and it appearing, further, that she had been sold to a *bona fide* purchaser having no knowledge of the claim, it was held he could not recover, notwithstanding the fact that the libel was filed before the sale took place.

2. SAME—NOTICE.
    . The filing of a libel, and the issue of an attachment, without seizure of the vessel, is not constructive notice of the pendency of the suit.

In Admiralty.

This was a libel for towing the barge Robert Gaskin from Bay City to Lake Erie, August 12, 1873; amount claimed, $150; defence, stale claim.    The testimony showed that the present owners bought the Gaskin, which was a foreign vessel, March 12, 1880, for a valuable consideration, and without notice of libellant's claim.    At the time the services were rendered she was owned in Kingston, Ontario, and was generally engaged in the Canadian trade.    In 1874 she made three trips to Sault St. Marie, remaining each time five or six days.    Upon returning from one of these trips, she lay at Port Huron 12 hours, discharging cargo.    In 1875 she was in Michigan four times, and upon one trip lay in Detroit river, opposite the city, for several hours.    In 1876 she was again at Bay City, where libellants resided.    They visited her here; made a demand upon the master for the payment of their bill.    They were content, however, with promises, and made no efforts to collect by legal proceedings. The barge was in Michigan three times in 1877, and once in 1878, but this fact was not known to the libellants.    In 1879 she was again in this neighborhood, and lay off Detroit for about 18 hours.    The bill appears to have been sent to the marshal at this place, with instructions to collect, in the spring of 1877, but no libel was filed until October 17, 1879, when an attachment was issued and kept alive by renewals until June 23, 1880, when she was seized.    This was three months after she had been sold, and eight months after the libel was filed and the first attachment issued.

J. W. Finney for libellant.

Wm. A. Moore, for claimant.

BROWN, D. J.    In this case six years and three months elapsed from the time the service was rendered to the day the libel was filed. No excuse is shown for the delay.    In *The Hercules*, 1 Brown, Adm. 559, I had occasion to hold that the libel should be filed during the current season of navigation, or as early the following season as it was probable the vessel could be seized.    The testimony does not show such an absence from these waters as precluded the necessity

of diligence. I see no reason to doubt that, if an attachment had been promptly taken out in the spring of 1874, the vessel would have been seized before the close of navigation. In 1876 she visited Bay City, and libellant there demanded his bill. Then, certainly, if not before, it was his duty to act. It is true he might not have been able to seize her before leaving Bay City, but if he had forwarded his claim at once to Detroit, an attachment might have been issued, and the brig seized on her down trip.

It is insisted, however, that the fact that the libel was filed before the sale was made to the present owners is sufficient evidence of diligence. It is not perceived how the owners are placed in any better position by this fact than they would have been if the libel had been filed after the sale. The fact that the libel was filed five months before the sale, can only be material upon the theory that the filing of the libel and the issuing of the attachment were constructive notice of the pendency of the suit. There is no doubt that in cases affecting real property the commencement of a suit is constructive notice of the *pendente lite*. Wade, Law of Notice, *c.* 2, § 5; *County of Warren* v. *Marcy*, 97 U. S. 107.

It is doubtful, to say the least, whether the commencement of a suit to enforce a lien upon a vessel is such a suit as is within the contemplation of this rule. But, waiving this question, it is quite evident that the suit was not commenced at the time the sale was made in such a way as to bind *bona fide* purchasers of the property, without actual notice. For the purpose of ascertaining whether a suit is brought within the statutory limitation, the suit is generally held to be commenced from the date the process is issued and placed in the hands of an officer for service; but in other cases, where the question as to the validity of a purchase depends upon whether the property purchased is the subject of litigation at the time, the suit will not be regarded as pending until the service of original process, whether the same is personally served upon the defendant, or by any method prescribed by statute as a substitute for personal service. Wade, Law of Notice, § 348.

Now, as it is clear in this case that the process was not served upon the vessel until three months after the sale, the suit cannot be regarded as having been commenced until that time. The creditor of a vessel is bound, as against a *bona fide* purchaser, to use due diligence; and I know of nothing but the continued absence of the vessel from the reach of process which will excuse him. He has no

right to wait and speculate upon the chance of the vessel being sold. In this case it made no difference to the vendee whether the libel was filed before or after his purchase, so long as he had no actual notice of the claim.

In *The City of Tawas*, 8 Cent. Law J. 191, I had occasion to observe that claims are not pronounced stale upon the sole ground of estoppel. In this case the claim of a material-man accrued shortly before the mortgage was given, and it was insisted that although the libellant waited for a considerable time before filing his libel, the claim had not become stale as against the mortgagee, as it was not stale when the mortgage was given, and there having been no change in the relative situation of the parties up to the time of filing the libel, the mortgagee had not been injured by the delay. I felt obliged to hold, however, that the creditor was bound to use due diligence himself, and that the court could not enter into nice inquiries as to how far the subsequent purchaser had been damnified by his failure to proceed immediately.

If libellants had taken out their attachment in the spring of 1874, and kept it alive by repeated renewals, I would have enforced the claim even at this late date; but after being guilty of such inexcusable laches, he cannot be heard to say that he filed the libel before the sale was made.