## COBURN v. FACTORS & TRADERS INS. CO. and others.[1]

*(Circuit Court, E. D. Louisiana.    April, 1884.)*

1. **ADMIRALTY—STALE CLAIM.**

    The libelant sued for his share of salvage money that had been received by respondents more than nine years previously, during which time libelant had made no claim, nor pretended any, and in the mean time the rights and position of the respondents had materially changed, and they had been condemned to pay and had paid to others more than the salvage money that they had received. *Held,* that the claim of the libelant was stale, and could not, therefore, be enforced in admiralty.

2. **SAME—CHANGE OF CIRCUMSTANCES.**

    In other cases where this court has allowed similar claims, notwithstanding the lapse of time, it was a potent factor that the delay had not been injurious to the respondent; the circumstances had not changed,—the party defendant still held the money.

3. **SAME—LAPSE OF TIME.**

    Whether a claim will be held stale in admiralty does not depend so much upon lapse of time as upon change of circumstances affecting the rights and conditions of parties.

Admiralty Appeal.

From 1871 to 1876 the libelant was master of the tug Tyler, owned by the Harbor Protection Company, a body claiming to be incorporated by a number of the insurance companies of New Orleans, the act being signed by their respective presidents, and the stock owned by the various companies. The tug was employed as a fire-boat in the harbor of New Orleans, extinguishing fires on ships, etc., throwing water over the levees for the use of the fire-engines, and did some towing also. During this period she had earned salvage by putting out fires on ships, steam-boats, etc., in the harbor, amounting to $74,723.48. In 1873 there was a division of a portion of the salvage earned to that date, but none afterwards. In 1875, 1876, 1877, and 1878, all the crew except libelant brought libels against the Harbor Protection Company, and the various insurance companies, alleging that the Harbor Protection Company was not a corporation, and that the companies were bound to them for their share of the salvage. After protracted and bitter litigation the district and circuit courts held that it was not a corporation, and that the companies were bound. The libelant, Colburn, was a witness in nearly all the cases for the company, and did his utmost to defeat the crew in their claims. Subsequently, in 1876, another company was formed, called the New Harbor Protection Company, and a new boat was built and employed as the tug Tyler. The libelant, in a case of salvage earned by the new boat, released to the new company all his right, title, and claim to any salvage which had been earned by the tug Tyler. He filed his libel for his share of the salvage as master, March 6, 1883, claiming $1,238.62 from the Factors' & Traders' Insurance Company,

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

and $771.60 from the Home Insurance Company. The defenses set up by both companies are (1) that the libelant contemplated this service when he was hired as master, and that, not being a seaman, within the meaning of sections 4535, 4536, Rev. St., and having released his claim, if any he had, he had no standing in court; (2) stale claim, without any excuse shown for delay. And the Home set up the further defense that the corporation of the Harbor Protection Company was *ultra vires;* that it (the Home) was a new corporation; that the old company, the Home Mutual, could not be bound beyond the portion of the salvage it had received; that the new company had paid to the crew more than the old Home Insurance Company had ever received.

*Richard De Gray,* for libelant.

*Charles B. Singleton, Richard H. Browne, B. F. Choate, F. T. Nichols,* and *Chas. Carroll,* for respondents.

PARDEE, J. After much deliberation in this case I have concluded that it makes very little, if any, difference whether the respondent companies were stockholders, incorporators, or copartners in the Harbor Protection Company. In either case they were beyond their rights and powers under the scope and effect of their charters as insurance companies, and what they have done has been *ultra vires.* But the view I take of the case renders it unnecessary to determine the responsibilities devolving on them by reason of their connection with the Harbor Protection Company, but for the case concede them to be as claimed by libelant. Nor is it necessary to consider as to the legal force and effect of the employment of libelant by the Harbor Protection Company, and the several agreements by and between libelant and the same company. Neither the Harbor Protection Company nor the respondents owe the libelant by reason of any salvage services rendered to or for them. The case is that the Protection Company, in the first instance, and the respondent in the second, had received moneys for salvage services, which, in law and in fact, belonged to the officers and crew of the tug-boat on which libelant was employed, and a share of which money belonged to him. It may be assumed, and perhaps correctly assumed, that libelant, as master of the tug-boat earning the salvage collected by the Harbor Protection Company owners, was entitled to his share of the same, as claimed in the libel, and that he never has legally waived or abandoned his right to sue for and collect the same. As the respondents did not owe libelant this money, they cannot be held liable for it beyond the responsibility devolving on them as copartners or stockholders in the Harbor Protection Company, and that which they incurred when they received the money, or part of it, from the Harbor Protection Company. In short, the demand libelant has in this is one for money had and received, either by the Protection Company, for which respondents may be said to be liable, or by the respondents themselves. The case shows that the Harbor Protection Company, owners of the

salving tugs, from December, 1871, to March, 1876, received large amounts, say $74,723.48, of salvage, a portion of which belonged to the libelant as master; that whatever was done with the said salvage money by the Protection Company, only the sum of $2,144 thereof was turned over to the Home Insurance Company, and only the sum of $3,863.20 thereof was turned over to the Factors' & Traders' Insurance Company. The case further shows that these sums were turned over in December, 1873, since which time libelant's claims have been exigible; and that while libelant has stood by, pretending no claim, rather renouncing any claim, other persons having claims against these funds on the same account of salvage, have, by suits instituted in the admiralty court from time to time, recovered from respondents as salvage moneys more than the original amounts received by respondents, to-wit, from Home Insurance Company the sum of $2,253.42, and from Factors' & Traders' Insurance Company the sum of $3,939.50.

And this brings me to what I consider as certainly a meritorious defense to the libelant's demand, i. e., staleness of demand. The sum claimed by libelant was earned nearly all prior to December, 1873, only a small portion having been earned thereafter to March, 1876. In December, 1873, the respondents received the salvage money that furnishes ground for liability in this case. This suit was instituted March 6, 1883, so that for over nine years the libelant made no claim, nor pretended any. In fact, the evidence in the case shows that during nearly all of the nine years, both by actions and words, libelant repudiated and renounced any and all claims. His justification for his silence and for his conduct is that if he had spoken he would have lost his employment. As against his employers this is a very strong excuse; and I believe that heretofore in this court it has been held sufficient, but only in cases against employers, and where the substantial rights of the parties had undergone no change. *Sonderberg Towboat Co.* by Justice BRADLEY, 3 Woods, 146; *Averill* v. *Yorke*, by Judge PARDEE, (not reported;) Cohen, Adm. 164. Here the case is entirely different. Even conceding that the respondents stood to the libelant in the relation of employers, and still the rights and position of respondents has been materially changed, while the libelant has stood idly by, making no claim.

In the *Sonderberg Case, supra,* Justice BRADLEY said:

"I do not see that an action *in personam,* such as this is, against those who have received and *still hold* moneys fairly belonging to the libelants, can be said to be a stale demand, in the admiralty sense, by means of any lapse of time (two years) which has taken place in this case."

And in the case of *Averill* v. *Yorke, supra,* it was said:

"And where the salvage money was withheld by the owners, and certain of the salving crew remained in the employ of the ship-owners without making claim to their share of the salving money for fear of discharge and loss of employment, such an apprehension was a sufficient reason for not prosecuting their claim sooner; and where under such circumstances the claim is not pros-

ecuted for over a period of nine years, a plea of staleness of demand constitutes no defense."

In these cases I think that this court has gone to the verge of reason and equity in relieving parties who have slept upon their rights, but in each it will be observed that a potent factor was that the delay had not been injurious to the respondent. The circumstances had not changed. The party still held the money. Here the case is very different. The Harbor Protection Company deceased in 1876. Its assets were divided. Some of its partners or stockholders have become insolvent. One of the respondents here is liable, if at all, only as the purchaser and successor of one of the partners or stockholders. The respondents have paid out on similar claims to libelants more than they received of salvage money. Whether a claim will be held stale in admiralty does not depend so much upon lapse of time as upon change of circumstances affecting the rights and conditions of parties. Three months' time may render a claim stale, as where a lienholder has stood by and permitted a ship to pass into the hands of innocent purchasers, while perhaps three years would not be sufficient without change of ownership. Here both lapse of time and change of condition are factors, and I think it would be inequitable to hold the respondents liable, and this particularly in view of the fact that libelant has not simply remained silent as to his demands, but has openly, notoriously, and in writing renounced and denied his claims.

The assignment of May 5, 1879, may or not be valid as a transfer of libelant's claim for salvage in favor of the New Harbor Protection Company, but in favor of these respondents it should certainly have effect as an estoppel. And the same may be said as to the other acts and conduct of the libelant.

A decree will be entered dismissing the libel, with costs of both this and the district court.