NORFOLK SAND & CEMENT CO. v. OWEN.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1902.)

No. 428.

1. MARITIME LIENS—STATUTORY LIENS—LACHES IN ASSERTING.

A lien for repairs given by a state statute, which makes no provision for recording, must be asserted within a reasonable time, dependent on the circumstances of each case, or it will not be enforced by a court of

admiralty as against innocent third persons whose rights have intervened.

**2. SAME—ENFORCEMENT AGAINST BONA FIDE PURCHASER.**

Libelant made repairs on a steamer in a Virginia port for which he took the owner's note, due in six months, but also claimed a lien on the vessel under the state statute. The vessel remained in the vicinity of such port, and within the reach of process, for more than a year, and was then sold to claimant, who had no notice of the lien, which libelant took no steps to enforce until fourteen or fifteen months after the repairs were made. *Held*, that his delay was unreasonable, and that he was debarred by his laches from the right to enforce the lien against the purchaser, but that a lien might be enforced for other repairs made within six months.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

H. H. Little (Hughes & Little, on the briefs), for appellant.

R. H. Riddleberger, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

BRAWLEY, District Judge. The libelant, Owen, claims a lien for repairs upon the schooner Tull, whereof Gundy was owner and master, up to November, 1899, when she was sold to the claimant. The first repairs were made in August and September, 1898, at Sharp's wharf, in Essex county, Va., at the request of Gundy, who lived in the same county, about 20 miles distant. The lien is claimed under the statute of the state of Virginia, which provides:

"If any person has any claim against the master or owner of any steamboat or other vessel * * * for materials or supplies furnished or provided or for work done for, in or upon the same, * * * such person shall have a lien upon such steamboat or other vessel, raft or river craft for such supplies or materials furnished, work done," etc. Code, § 2963.

The first contention of the claimant is that under the general maritime law, where supplies are furnished on the order of the owner, there is a presumption that the same are furnished on his credit, and that the circumstances attending the transaction and the taking of a note negative the claim of an intention to look to the vessel for payment. It seems from the testimony that when the schooner was taken to Owen for repair there was some conversation between the parties as to the securing payment therefor, both believing that there was a lien for such repairs; but Owen, being unwilling to rely upon such lien, as boats of that kind were frequently sunk, wished some other security. Inquiry was made by him as to Gundy's pecuniary condition, which disclosed the fact that he had some other property, and a note for the amount of the bill was taken payable in six months, which has not been paid, and has been surrendered. It is clear that a taking of a note under these circumstances would not relinquish the lien, and it is not to be lightly presumed that the libelant relied exclusively upon the personal responsibility of the owner; but the conclusion reached by us makes it unnecessary to determine whether the lien existed, for we are of opinion that under the circumstances, if it did exist, it could not be enforced against a bona fide purchaser.

There is urgent need of federal legislation on this subject; for, inasmuch as under general maritime law there is no lien for supplies or repairs to vessels in home ports, the states have generally undertaken to provide by statute that persons making repairs and furnishing supplies shall have a lien therefor, and the conditions requisite to the establishing of such liens are diverse. In some of the states they are required to be recorded; in others there is no such requirement. In some there are conditions and forms of proceeding not in harmony with the principles and rules of the maritime code, but all such liens in the nature of maritime liens are now by the well-settled decisions of the supreme court required to be enforced in the courts of the United States in admiralty, which thus are compelled to examine and expound the varying and sometimes conflicting lien laws of the different states. It would, therefore, be of great advantage if some uniform law should prescribe that such liens should be recorded in the custom houses, and the existence of secret liens, so abhorrent to the spirit of commercial life, be thus avoided.

The statute of Virginia, cited in support of the lien under consideration, makes no provision for any recording thereof, and there are no circumstances from which it could be inferred that there was lack of diligence in a purchaser in failing to discover it. The work was done in August and September of 1898. The vessel remained in and about the waters of her home port until November, 1899, when she was sold to a bona fide purchaser, who had no notice of the lien claimed, and no means of ascertaining its existence. The libel was filed in January, 1900.

While courts of admiralty are generally governed by the analogies of common law limitations, they are not bound by them, and nowhere is there more general acceptance of the maxim, "Vigilantibus non dormientibus subveniunt leges." A lien which might be enforced after a considerable lapse of time against a vessel in the possession of a claimant, who was the owner at the time it accrued, is considered stale in a much shorter time if the vessel has passed into the possession of another in ignorance of it, and the circumstances rendered it inequitable to enforce it.

While no fixed or arbitrary rule has been established which would be of universal application, the governing principle which has been applied in most of the cases that have been examined, and which seems consonant with natural justice and equity, is that wherever a secret lien is sought to be established upon a vessel which has passed into the possession of a bona fide owner who was ignorant of its existence, and who had no reasonable opportunity to discover it, the court will make rigid scrutiny of the circumstances of the delay, and if there has been reasonable time to enforce the lien, and the vessel has been within reach of process, the party neglecting to avail himself of it will not be allowed to enforce it to the prejudice of an innocent third party. The diligence demanded must accord with the circumstances of each case and existing opportunities, and a court of admiralty will refuse its aid in the enforcement of the lien if, under the same circumstances, a court of equity would do so, a change of circumstances affecting the rights and conditions of the parties being more considered than mere

lapse of time. The Key City, 14 Wall. 660, 20 L. Ed. 896; The Admiral, Fed. Cas. No. 84; The Chusan, Fed. Cas. No. 2,717; Coburn v. Insurance Co. (C. C.) 20 Fed. 644; The J. W. Tucker (D. C.) 20 Fed. 133; The Thomas Sherlock (D. C.) 22 Fed. 253; The Young America (D. C.) 30 Fed. 789; The Robert Gaskin (D. C.) 9 Fed. 62; The Alfred J. Murray (D. C.) 60 Fed. 926; The Lottawanna, 21 Wall. 571, 22 L. Ed. 654; The John Lowe, Fed. Cas. No. 7,356; The Eliza Jane, Fed. Cas. No. 4,363.

In accordance with the principles established by the cases cited, we must conclude that the delay of 15 or 16 months in taking any steps for the enforcement of the lien, the vessel being all that time within reach of process, is an unreasonable delay, and that it would be inequitable to establish it against the vessel, which has passed into the hands of an innocent third party. This disposes of the items set forth in Exhibits A and B of the libel, for work done in August and September, 1898.

As to the work done in July, 1899, set forth in Exhibit C, it seems to be clear that these repairs must have been made in reliance upon the lien upon the vessel, and not upon the credit of the owner, who was already in default in the payment of the note then past due. We are not entirely satisfied that the delay has been so unreasonable as to forfeit the lien, and as to this item the decree of the court below will be affirmed.

The proper order will be to remand the case to the district court to modify its decree in accordance with this opinion, the appellant to have his costs in this court, and the libelant his costs in the court below.