**NOLTE et al. v. HUDSON NAV. CO. FARMERS' LOAN & TRUST CO. v. HUDSON NAV. CO. et al. NATIONAL COMMERCIAL BANK & TRUST CO. OF ALBANY v. SAME.**

(Circuit Court of Appeals, Second Circuit. January 14, 1924.)

No. 98.

1. **Admiralty ⊕34—Statutes of limitation may properly be followed.**

While a statute of limitations is not strictly a bar in admiralty, there is no sufficient reason why it should not be followed in admiralty, as it is in courts of equity.

2. **Maritime liens ⊕61—Right to enforce lien held barred by laches.**

Consol. Laws N. Y. c. 33, art. 4, § 83, provides that the liens thereby given on domestic vessels for supplies furnished, etc., shall cease at the expiration of 12 months. *Held*, that an unexcused delay of 19 months before taking steps to enforce a lien on a domestic vessel of New York, under Ship Mortgage Act, § 30, subsec. P (Comp. St. Ann. Supp. 1923, § 8146¼ooo), constituted laches, which barred the right to its enforcement.

3. **Courts ⊕375—State statute limiting time for enforcement of liens on domestic vessels followed under Ship Mortgage Act.**

Under Ship Mortgage Act, § 30, subsec. S (Comp. St. Ann. Supp. 1923, § 8146¼ppp), providing that "this section shall not be construed to affect the rules of law now existing in regard to * * * laches in the enforcement of liens upon vessels," a state statute giving the right to liens on domestic vessels and limiting the time for their enforcement creates a rule of law, which should be followed in suits to enforce liens under the federal statute on domestic vessels of that state.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Elizabeth M. Nolte, executrix, and Frederick W. Nolte, executor, of the will of Charles H. Nolte, deceased, against the Hudson Navigation Company, with which are consolidated suits by the Farmers' Loan & Trust Company, trustee, and by the National Commercial Bank & Trust Company of Albany, trustee, against the same defendant and others, for foreclosure of mortgages. From an order allowing the claim of the Conron Bros. Company as a preferred claim, the mortgagees appeal. Reversed.

Certiorari denied 44 Sup. Ct. 403, 68 L. Ed. ——.

A bill of complaint was duly filed by Charles H. Nolte in the District Court for the Southern District of New York on February 16, 1921, in which it was asked that receivers might be appointed, who should take immediate possession of its books and papers, as well as its assets, for their conservation. It was also asked that an injunction might issue, enjoining the aforesaid company from doing or permitting to be done any act in connection with the assets and property of the corporation. An answer was duly interposed, which admitted all the allegations of the bill, and the defendant joined in the prayer for the appointment of the receivers and consented thereto.

Thereupon, and on the same day the bill was filed, the court appointed as temporary receivers Middleton S. Borland and James A. Emerson. On January 21, 1922, James A. Emerson, one of the receivers of the Hudson Navigation Company, died, and thereafter and on July 18, 1922, Middleton S. Borland was, by an order of the District Court continued as receiver of the said Navigation Company and of the property thereof, with all the powers and duties which had been conferred and imposed upon the receivers by the various orders of the court.

By an order made on April 16, 1921, it was directed that all creditors should appear and prove their claims on or before May 2, 1921, or be excluded from the benefits of the receivership proceeding; and subsequently an order was entered which extended to July 20, 1921, the time within which persons asserting any maritime or other unrecorded lien against the property in the receivers' hands might present such claims, but without prejudice to any right they might have to bring an action in admiralty. The order further provided that "any person having any such claim, who shall fail to present the same to the said receivers on or before the said 20th day of July, 1921, shall be barred from sharing in the benefit of the distribution of moneys and proceedings of the properties of the defendant that now are or hereafter shall be in the hands of the receivers. * * *"

It also appears that on August 21, 1922, leave was granted, over the appellants' objection, to Conron Bros. Company, appellees, to file with the receivers nunc pro tunc as of July 20, 1921, its claim for a priority for supplies furnished between August 2 and November 27, 1920. On August 22, 1922, Conron Bros. Company filed with the receivers its claim of priority, based upon an assertion of a maritime lien upon three steamers of Hudson Navigation Company, in the possession of the receivers. The receiver filed a report opposing the claim, and the appellants filed answers and objections to it. These answers, among other things, set up the defense that, because of laches, the claimant should not be allowed to enforce its claim of maritime lien. The matter was heard before a special master appointed for that purpose.

Conron Bros. Company at various times between August 2 and November 27, 1920, at the instance and request of Hudson Navigation Company, the owner of the steamers Fort Orange (formerly the C. W. Morse), Trojan, and Rensselaer, furnished and delivered to the said vessels at Pier 32, North River, New York City, meat and other food supplies for the crew and passengers of the said vessels, at the prices and of the value of $6,780.75. Certain promissory notes to the amount of $6,765.95 were given by the Hudson Navigation Company to Conron Bros. Company, but with the understanding that

their receipt was without prejudice to any rights of Conron Bros. Company to libel these three vessels. Soon after the appointment of the receivers, a representative of the claimant interviewed one of the receivers and demanded payment of the claims against the vessels. The receiver made certain reassuring remarks, to which the representative of the claimant said, "I can get my money now by going ahead and libeling the ship."

The claimant continued to do business with the receivers until the beginning of July, 1922, and during the entire period from the date the goods above referred to were delivered until the present the said vessels were regularly operated on the Hudson river, within the Southern district of New York, and this fact was known to the claimant. It thus appears that Conron Bros. Company made no attempt to enforce their claim for a priority until August 21, 1922, 19 months after the last delivery of the goods had been made. The effect of this delay is the sole issue on this appeal.

On July 8, 1921, an order was entered appointing a special master and referring this matter to him to investigate and report. On November 22, 1922, the master submitted his report, and stated it as his conclusion that the Conron Bros. Company was, in his opinion, not entitled to enforce any maritime or other lien on any of the property of the defendant Hudson Navigation Company because of laches.

Pending in the District Court and consolidated with the receivership proceedings were two suits to foreclose mortgages. The Farmers' Loan & Trust Company, as trustee under a mortgage of the New Jersey Steamboat Company, subsequently merged into the Hudson Navigation Company, which mortgage was dated March 2, 1891, filed its bill for the foreclosure of that mortgage. That mortgage conveyed and transferred to the trustee all of its property of every kind and description that it then owned or might thereafter acquire. And the National Commercial Bank & Trust Company of Albany, as trustee, successor trustee to Union Trust Company of Albany, under a mortgage of the Hudson Navigation Company, which mortgage was dated February 1, 1908, filed its bill for the foreclosure of that mortgage. That mortgage included in the property covered the steamships now known as Fort Orange and the Trojan and Rensselaer. The Hudson Navigation Company had assumed the payment of the principal and interest of the mortgage made by the New Jersey Steamboat Company to the Farmers' Loan & Trust Company as trustee.

It is specifically stipulated by all the parties concerned herein, for the purposes of this appeal, that both the Farmers' Loan & Trust Company, as trustee, and the National Commercial Bank & Trust Company of Albany, as trustee, have a mortgage lien upon all the boats owned by the Hudson Navigation Company and that the mortgages were duly recorded, that to the Farmers' Loan & Trust Company in the custom house in the city of New York on June 12, 1891, and that to the National Commercial Bank & Trust Company, as trustee, dated February 1, 1908, was duly recorded in the same custom house, and in the custom house at the port of Albany, N. Y., on February 24, 1908, and a supplemental mortgage dated October 20, 1909, and July 10, 1913, to the same trustee, were respectively duly recorded in the custom house in the city of New York on February 24, 1910, and July 10, 1913.

The claimant, Conron Bros. Company filed exceptions to this report of the special master, and the matter came on to be heard before the District Judge, and on May 5, 1923, he rendered an opinion in which he reversed the order of the special master, and on May 16, 1923, entered an order stating that Conron Bros. Company had maritime liens on the steamers Fort Orange, Rensselaer, and Trojan for supplies. This order directed the receiver to pay to Conron Bros. Company or to its solicitors the sums found due. From this order of May 16, 1923, the Farmers' Loan & Trust Company, as trustee, and the National Commercial Bank & Trust Company of Albany, as trustee, have appealed.

Geller, Rolston & Blanc, of New York City (Mansfield Ferry, Henry N. Flynt, and Alexander C. Neave, all of New York City, of counsel), for appellant Farmers' Loan & Trust Co.

Graham, McMahon, Buell & Knox, of New York City (John B. Knox and Edward Ward McMahon, both of New York City, of counsel), for appellant National Commercial Bank & Trust Co. of Albany.

Alexander & Ash, of New York City (Mark Ash and Edward Ash, both of New York City, of counsel), for appellee Conron Bros. Co.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The Conron Bros. Company, which sought successfully in the court below to assert a lien for supplies furnished, is a New York corporation, maintaining an office in the city of New York. It is a wholesale dealer in beef, poultry, butter, and eggs. The Hudson Navigation Company, the defendant, was the sole owner of certain steamers which it employed on the Hudson river in the carriage of passengers between New York and Albany. The supplies were furnished in the summer and fall of 1920. This company is hereinafter referred to as the Navigation Company, and after the latter passed into the hands of receivers, which it did by the order of February 15, 1921, an order was entered on April 16, 1921, which provided that all creditors of the Navigation Company must appear and prove their claims on or before May 2, 1921. This time for presentation of claims was by an order of the court subsequently extended to July 20, 1921.

On August 8, 1922, Conron Bros. Company gave notice of its intention to apply to the court on August 17, 1922, for leave to file its claims against certain steamers owned by the Navigation Company, and to file them nunc pro tunc as of July 20, 1921. It gave written notice that such claims were "entitled to a priority or preference in payment by reason of their constituting maritime liens against the steamers, or for leave to file its libels upon said claims in admiralty against said steamers and thereafter proceed against the same in rem."

On May 16, 1923, the District Court, overruling the master's report, entered an order which adjudged that Conron Bros. Company had maritime liens upon the vessels for supplies furnished, and the receiver was directed to pay the sums due on account of the liens aforesaid, and it denied the motion for leave to file libels in admiralty against the steamers. It also directed the receiver to set aside out of the sums in his hands a special cash deposit of $8,500, and to hold the same as security for the payment of the amount due to Conron Bros. Company, claimant, with interest and costs, in case of the affirmance of the order.

The sums which were found due and directed to be paid by the order were as follows: To the steamer Fort Orange, to the extent of $2,012.51, with interest thereon from September 17, 1920. To the steamer Rensselaer, to the extent of $2,300.93, with interest from November 27, 1920. To the steamer Trojan, to the extent of $2,467.-31, with interest from November 23, 1920.

From this order the Farmers' Loan & Trust Company, as trustee, and the National Commercial Bank & Trust Company of Albany, as trustee, have both appealed. Neither the Hudson Navigation Company, which went into receivership and is the defendant herein, nor the receiver, have appealed.

[1] The appeals involve solely a question of law. That question is whether Conron Bros. Company, claimant, is barred by its laches from asserting a maritime lien and its right to priority of payment. The Merchant Marine Act of June 5, 1920, 41 Stat. c. 250, p. 988, § 30, which section is known as the "Ship Mortgage Act, 1920," provides in subdivision P (Comp. St. Ann. Supp. 1923, § 8146¼ooo), for a lien. It reads as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

It is admitted that Conron Bros. Company furnished to the steamers Fort Orange, Trojan, and Rensselaer, at the request of the Navigation Company, through its purchasing agent, certain meat and other food supplies, which were fit, proper, and necessary for the victualing of the crews of these vessels and for meals furnished to the passengers carried by the said steamers which were owned and operated by the aforesaid company. There is no question but that for the supplies so furnished in the city of New York Conron Bros. Company were entitled, under the above act of Congress, to a maritime lien on the vessels, there being a balance remaining unpaid for the supplies furnished of $6,780.75. For this balance the Navigation Company gave its notes. The date, maturity, and amount of these notes were as follows:

| Dates. | | Maturities. | | Amounts. |
|--------|--|-------------|--|----------|
| October | 20, 1920. | February | 21, 1921 | $2,000.00 |
| December | 20, 1920. | February | 20, 1921 | 1,000.00 |
| December | 23, 1920. | February | 21, 1921 | 882.98 |
| December | 23, 1920. | March | 21, 1921 | 882.97 |
| January | 20, 1921. | April | 20, 1921 | 2,000.00 |
| | | Total | | $6,765.95 |

It was agreed at the time of the acceptance of the notes that, if they were not paid, the right to libel the vessels was not surrendered.

The latest date on which any of the supplies were delivered to any of the vessels was November 27, 1920. The cause of action certainly accrued at least as early as that date. But Conron Bros. Company appears to have taken no steps to enforce its rights until August 8, 1922, when it gave notice of its intention to move for leave to file its claim, and that the motion would be heard on August 17, 1922, or as soon thereafter as counsel could be heard. It moved to be permitted to file its claims nunc pro tunc as of July 20, 1921, and claimed that it was entitled to a preference in payment on the theory that it had a maritime lien against the vessels. The District Court referred the matter, as we have seen, to a special master, who reported that the claimant was not entitled to enforce a maritime lien, and was entitled only to the allowance of the claim as a general creditor. It was the master's opinion that the claimant had lost its lien by laches, as more

than 19 months had been permitted to elapse between the time when the lien accrued and the time when the claimant asserted its right. "The claimant," said the master, "deliberately chose to abstain from seeking a court remedy. Knowing its lien rights, it preferred to enjoy the patronage of the receivers and to rest upon the assurance of one of them that merchandise creditors would be paid out of earnings of the receivership."

While the general maritime law of the United States has always given the materialman a lien upon a foreign vessel which he supplied with necessaries, it is well settled that it gave him no such lien upon a domestic vessel. The Lottawanna, 21 Wall. 558, 22 L. Ed. 654. To remedy this omission a number of the states, including the state of New York, passed statutes providing liens for necessaries supplied to domestic vessels. Article 4 of chapter 33 of the Consolidated Laws of New York makes provision for such a lien for provisions and stores furnished within that state for the use of such a vessel, and section 83, fixes the duration of such a lien. Its language is:

"Every lien for a debt shall cease if the vessel navigates the western or northwestern lakes, or either of them, or the St. Lawrence river, at the expiration of six months after the first of January next succeeding the time when the debt was contracted, and in case of any other vessel, at the expiration of twelve months after the debt was contracted. * * * *"

It is clear, therefore, that at the time of the enactment of the Merchant Marine Act of 1920 the New York law imposed a statute of limitations of one year upon the enforcement of liens on "domestic" vessels navigating the Hudson river, as these vessels did. The courts of admiralty act upon the maxim, "Vigilantibus non dormientibus subveniunt leges." "This is the constant practice of courts of admiralty," as stated in Benedict's Admiralty (4th Ed.) § 515. The Supreme Court in The Key City, 14 Wall. 653, 660, 20 L. Ed. 896, declared the law of the admiralty respecting the defense of laches in the enforcement of maritime liens. In that case Mr. Justice Miller, writing for the court, said:

"1. That while the courts of admiralty are not governed in such cases by any statute of limitation, they adopt the principle that laches or delay in the judicial enforcement of maritime liens will, under proper circumstances, constitute a valid defense.

"2. That no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.

"3. That where the lien is to be enforced to the detriment of a purchaser for value, without notice of the lien, the defense will be held valid under shorter time, and a more rigid scrutiny of the circumstances of the delay, than when the claimant is the owner at the time the lien accrued."

It has been held in numerous cases that a state statute of limitations does not apply to maritime liens. Coburn v. Factors' & Traders' Ins. Co. (C. C.) 20 Fed. 644; The Queen (D. C.) 78 Fed. 155; The Lauretta (D. C.) 9 Fed. 622; The Robert Gaskin (D. C.) 9 Fed. 62; Brown v. Jones, 2 Gall. 480, Fed. Cas. No. 2,017; Willard v. Dorr, 3 Mason, 91, Fed. Cas. No. 17,679; H. B. Foster, 3 Ware, 167, Fed. Cas. No. 6,291; Griswold v. The Nevada, 2 Sawy. 145, Fed. Cas. No. 5,839; The Platina, 3 Ware, 182, Fed. Cas. No. 11,210.

But statutes of limitations are no longer regarded with disfavor. On the contrary, they are regarded with favor as being in the interest of justice. They are statutes of repose, and are enacted to compel parties to commence actions promptly. They are enacted, as Judge Lacombe explained in Southard v. Brady (C. C.) 36 Fed. 560, so "that debtors shall not be obliged to take care forever of their acquittances, or alleged debtors of the evidence which may enable them to defeat the claims advanced against them." They are founded upon public policy; and while a statute of limitations is not strictly a bar in admiralty, it has been thought that there is no sufficient reason why it should not be followed in admiralty, as it is also in the courts of equity. Scull v. Raymond (D. C.) 18 Fed. 547, 553; Southard v. Brady (C. C.) 36 Fed. 560; Davis v. Smokeless Fuel Co. (D. C.) 182 Fed. 1004; Davis v. Smokeless Fuel Co., 196 Fed. 753, 116 C. C. A. 381; Lincoln v. Cunard S. S. Co., 221 Fed. 622, 624, 137 C. C. A. 346.

[2] From what has already been said it appears that under the New York statute of limitations relating to the enforcement of liens on boats, with certain exceptions which have no relation to this suit, the lien ceased to exist "at the expiration of twelve months after the debt was contracted." And it has also been found as a fact by the special master that there were no exceptional circumstances making it inequitable to apply the New York state statute of limitations. He has found on the contrary as a fact that the vessels were regularly operated on the Hudson river and within the Southern district of New York during the entire period, and that this was known to the claimant during the whole of the time. So that, while the New York statute declared that there could be no lien after the expiration of 12 months, the claimant allowed 19 months to elapse before it took a step looking to the enforcement of a lien. We think this was too late. Its claim to a lien had then become stale and was lost by laches.

The District Judge, reversing the special master, in his opinion states that the provision of the New York statute which declares that "every lien for a debt shall cease at the expiration of twelve months after the debt was contracted" has been superseded by subdivision P of section 30 of the Merchant Marine Act of 1920, heretofore cited herein, and which declares that a person furnishing supplies to a vessel shall have a maritime lien upon the vessel. The District Judge said that in the case of a foreign vessel a person furnishing supplies would be entitled within this jurisdiction to enforce his lien at any time within six years, and he declared that, as the act of Congress now gave a lien against the domestic vessel for necessaries furnished, he concluded that the design was—

"to put domestic vessels on a parity with foreign vessels, and to render the former liable for its debts, to the same extent, and for as long a time, as the latter were accustomed to be dealt with in the admiralty."

[3] We are unable to agree with the conclusion which the District Judge reached. We think he has failed to give proper consideration to section 30 of the Merchant Marine Act, which provides for a lien on domestic vessels and then adds:

"This section shall not be construed to affect the rules of law now existing in regard to * * * laches in the enforcement of liens on vessels." Comp. St. Ann. Supp. 1923, § 8146¼ppp.

The New York statute, limiting the period for filing the libel to 12 months, was a rule of law then existing in regard to laches; and in our opinion the District Judge, in giving the construction he has to the section, has affected "the rules of law now existing in regard to * * * laches in the enforcement·of liens on vessels." The statute specifically retained the existing rules of laches, and under the rules then existing the right to enforce this lien on a domestic vessel within the jurisdiction of the Southern district of New York ceased at the end of 12 months.

Prior to the enactment of the Merchant·Marine Act of June 5, 1920, one furnishing supplies to a domestic vessel in the Southern district of New York had no lien, as we have seen, under the general maritime law. Such lien as existed was dependent upon the statutory law of New York, and it existed only for the period the statute prescribed, and that was for 12 months only; and where a local statute gave a lien against a vessel for supplies furnished in the home port it could be enforced only in the admiralty courts of the United States. The lien was enforced exclusively in the federal courts. The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345. And as the right to the lien in such cases was derived solely from the·local statute, it existed no longer than the statute prescribed.

The learned District Judge, in his opinion in the court below, has called attention to a number of similar statutes which have been enacted in other states, and has pointed out that they differ in fixing the period during which the lien continues. He shows that in some of them the life of the lien is for 6 months, in others 1 year; in others 2 years, and in others until the debt is paid. He adds that:

"With such differences existing in state legislation, it is submitted that, with the use of such statutes as standards of laches, the maritime law could not operate, even upon the same subject-matter, with any fair degree of uniformity, which is most desirable and of great advantage."

We do not for a moment question that it is most desirable that the admiralty law of the United States should be uniform and consistent "on all subjects of a commercial character·affecting the intercourse of the states with each other or with foreign states," as was said by Justice Bradley in The Lottawanna, 21 Wall. 558, 575, 22 L. Ed. 654, and since has been often repeated. But what the District Judge has overlooked is that the local statute applies only to domestic vessels of the state which enacted the statute, and that it has nothing whatever to do with vessels which belong to other states or to foreign states; and his argument proves too much, for, carried to a logical conclusion, it would have prevented the federal courts from giving any effect whatever to a local statute creating a right to a lien on a domestic vessel for supplies furnished it in the home port, as some states had such statutes and, others had not, and in those which had the period of time was not uniform.

The claimant had two courses open to it. It might have brought an action in personam or one in rem asserting a maritime lien. After

the appointment of the receivers and after the time had expired for proving its claim under the order of July 7, 1921, which extended the time for the presentation of claims to July 20, 1921, it came into court on August 21, 1922, and obtained permission to file its claim for a priority nunc pro tunc as of July 20, 1921. It has pursued throughout a dilatory course of conduct. We are satisfied that by its laches it has lost its right to proceed in rem. Under the New York Civil Practice Act (Laws 1920, c. 925, § 48) an action upon a contract obligation, except a judgment or sealed instrument, may be commenced within 6 years. The action of the District Court in allowing the claim to be presented nunc pro tunc preserves the right of the claimant as a general creditor, but does not help at all its right to enforce its lien.

Order reversed.