## THE BOISE PENROSE.

(District Court, S. D. New York. August 9, 1926.)

**1. Shipping** ⬤⟢76—**Owner of tug held liable for repairs made on order of conditional purchaser.**

Owner of a tug, which delivered her to a conditional purchaser, which contracted to give bond to protect the seller against liens, but did not do so, *held* liable for repairs made by libelant on order of the purchaser before it had completed payment for the tug, and which later became bankrupt.

**2. Maritime liens** ⬤⟢62—**Owner of tug when repairs were made held properly brought in by claimant in suit to enforce lien under admiralty rule 56.**

In a suit in rem to enforce a lien for repairs against a tug, claimant may bring in, under admiralty rule 56, one who was owner when the repairs were made and is liable therefor in personam.

**3. Maritime liens** ⬤⟢61—**Right to lien for repairs held barred by laches as against subsequent purchaser.**

Repairer of tug *held* not entitled to maintain suit, two years after the work was done, to enforce a lien, as against a subsequent purchaser under a clear bill of sale and without notice, by record or otherwise, of the claim.

**4. Maritime liens** ⬤⟢61.

The nature of the right to a lien involves the obligation to act without unexcused delay.

**5. Admiralty** ⬤⟢34.

State statute of limitations may be properly followed in admiralty, when there are no circumstances to render it inequitable.

In Admiralty. Suit by the National Dry Dock & Repair Company, Inc., against the steam tug Boise Penrose, the United Marine Contracting Corporation, claimant, with the Meseck Towing & Transportation Company, impleaded. Decree for libelant against the Meseck Towing & Transportation Company only.

Purrington & McConnell, of New York City, for libelant.

Alfred H. Strickland, of New York City, for claimant.

Alexander & Ash, and Edward Ash, both of New York City, for respondent impleaded.

GODDARD, District Judge. The suit was brought by the National Dry Dock & Repair Company, Inc., in rem, to recover for repairs, amounting to $2,392.96, made by libelant upon the tug Boise Penrose on June 14, 1919. The libel is in the usual form, alleging that the repairs were made at the request of the owner, master, or agent of the vessel.

The claimant, United Marine Contracting Corporation, appeared and filed its answer, alleging that it purchased the tug from the Meseck Towing & Transportation Company, Inc., on September 3, 1919, and received the usual United States custom house warranty bill of sale for same; and that the then owner ought to pay for the repairs which were made prior to her pur-

chase by claimant, and of which claim it had no knowledge. The claimant filed with its answer a petition under the fifty-ninth admiralty rule (now the fifty-sixth) bringing in the Meseck Towing & Transportation Company, and praying that, if there was liability for repairs, the Meseck Towing Company, and not the claimant, should be held.

The Meseck Towing Company appeared and filed its answer, denying any knowledge of the allegations of the libel, and alleging that on April 2, 1919, it entered into a written agreement with the Edward J. Barton Lighterage Company, Inc., whereby it agreed to sell and did deliver the tug to said Barton Company, and that on September 3, 1919, the Barton Company paid the balance due on the purchase price of the tug, and the Meseck Towing Company, at the request of the Barton Company, delivered to it a bill of sale with the name of the purchaser left blank, but which the Meseck Towing Company was informed was subsequently filled in with the name of United Marine Contracting Corporation as purchaser. The Meseck Towing Company also alleges in its answer that, if there was originally any lien against the tug, it has been lost by reason of libelant's laches.

### The Material Facts.

On April 2, 1919, the Meseck Towing Company entered into a written contract to sell the tug Boise Penrose to the Barton Company for $16,000, payable in installments; the last installment being due December 1, 1919, when the Meseck Towing Company was to execute a bill of sale for the tug. The contract contained the following clause:

"Fourth. The second party agrees to give to the first party a duly executed surety company bond in a company approved by the first party in the sum of $8,000 conditioned for the payment to the second party of any and all liens, libels, claims, or obligations placed upon or incurred by said vessel while she is in the possession of and being operated by the second party."

Barton was given possession of the tug, and no bond was ever furnished. On June 14, 1919, $3,392.96 worth of repairs are alleged to have been made by the libelant upon the Barton Company's request. The bills were made out, "Tug Boise Penrose and owners," and sent to the Barton Company; E. J. Barton, an officer of the Barton Company, having told the National Dry Dock & Repair Company's representative that the Barton Company had purchased her on a conditional bill of sale from the Meseck Towing Company, and that it had been arranged to give the Meseck Company a bond to protect it from liens. On March 18, 1921, the Barton Company paid $1,000 on account of the bill, reducing it to $2,392.96. On August 15, 1919, the Barton Company entered into a contract with the United Marine Contracting Corporation to sell the tug to it, and on September 3, 1919, with part of the proceeds received from the United Marine Company, paid to the Meseck Towing Company the balance of the purchase price, and requested the Meseck Towing Company to make out a warranty bill of sale in blank. The Barton Company, after filling in the name of the United Marine Contracting Corporation, delivered the bill of sale to the United Marine Company, which had no knowledge of any liens against the tug, and only learned of the libelant's claim of a lien shortly before the libel was filed.

In September, 1920, the United Marine Company employed the libelant to make some $4,000 worth of repairs on the Boise Penrose. When this work was completed, the libelant sent its bill for the $4,000, made out to the "Boise Penrose and owners," to the United Marine Company, but made no mention of the claim or lien for previous work. This bill of $4,000, covering repairs ordered by the United Marine Company, was paid by that company. The Barton Company went into bankruptcy in the summer of 1921, and on September 8, 1921, the National Dry Dock & Repair Company filed the present libel.

[1] It seems to me that the Meseck Towing Company is liable for these repairs. It was the owner of the tug at the time the repairs were made. That it was probable that the Barton Company would have repairs made to the tug, and possibly create liens upon her, when it got her in its possession, was recognized by the Meseck Towing Company, which impliedly, at least, consented to and authorized it, as is indicated in clause "fourth" of the sales agreement, and provided for the Meseck Company being indemnified by the Barton Company with the $8,000 bond. The Meseck Towing Company owned the tug at the time the repairs were made; the possession of her had been intrusted to the Barton Company, with the privilege of creating liens upon her for repairs; when they were completed, the bill was made out to "Tug Boise Penrose and her owners," and remains unpaid.

Upwards of two years elapsed before

the Meseck Towing Company received notice that repairs had been made and a lien claimed. This delay, however, is not sufficient to relieve it from its obligation to pay for the repairs to its tug, which it had permitted and authorized the Barton Company to have made, although possibly, had the National Dry Dock & Repair Company endeavored sooner to collect, the Meseck Company's chances of recovering from the Barton Company, now bankrupt, would have been better. The Meseck Towing Company well knew that it was assuming the risk of this very thing when they delivered the tug to the Barton Company under the conditions which they did, and in their contract with the Barton Company it was provided that they were to receive a bond to protect itself from what might and has actually happened, but it neglected to obtain the bond.

[2] The suit against the Meseck Towing Company is in personam, and its counsel urge that a court of admiralty has no jurisdiction over the matter, because the liability, if any, arises out of a breach of warranty. But, as I view it, the liability of the Meseck Towing Company is based upon its obligation to pay for repairs to tug incurred in its behalf, and not upon the warranty in the bill of sale to the United Marine Contracting Corporation. See Luckenbach v. Central Argentine R. Co. et al. (D. C.) 298 F. 344, 1924 A. M. C. 841.

[3] It also seems to me that the United Marine Contracting Corporation should be relieved from even secondary liability, for, as between all parties, they were innocent purchasers for value. No search of records would have indicated that the Meseck Towing Company did not have the clear title which it assumed to convey. On September 23, 1920, the Marine Contracting Corporation, who had owned and been in possession of the Boise Penrose since September 3, 1919, took her into the libelant's dry dock and arranged to have made repairs costing $4,000. When these were completed the libelant made no mention of any lien for previous work, and I am convinced from all the circumstances that the National Dry Dock & Repair Company knew that the United Marine Company was the then owner of the tug. Nevertheless the National Dry Dock Company kept their lien a secret from the Marine Company until after the bankruptcy of the Barton Company, and so that it was not until after more than two years that libelant gave notice that it claimed a lien and the libel was not filed until September, 1921, some 27 months after the repairs were made.

[4] Liens are created for the purpose of assuring prompt means of payment for one who renders services or supplies materials under special conditions. The nature of the right involves the obligation to act without unexcused delay, and one intending to avail himself of his special right must do so in a manner that tends to inform other creditors of such intention, and not allow his laches or acts to mislead another into believing, to the other's prejudice, that he claims no lien. He must make use of his right to a lien with reasonable dispatch, or it becomes stale and may be lost. A lienholder has been guilty of laches, and should lose his lien, where, 15 months after making the repairs for which he claims the lien, he permits an innocent purchaser to pay him $4,000 for recent repairs, and to prejudice his position without disclosing to him his lien, and gives no notice of or takes no steps to enforce his lien until upwards of 2 years after the time when the repairs for which he claims a lien were made.

[5] Moreover there are no exceptional circumstances making it inequitable to apply the New York statute of limitations (Consol. Laws N. Y. c. 33, art. 4, § 83) providing that such a lien shall expire in 12 months from the time the debt was contracted, and it comes within the rule laid down in Nolte v. Hudson Navigation Co. (C. C. A.) 297 F. 758. See, also, Coburn v. Factors' & Traders' Ins. Co. (C. C.) 20 F. 644; Norfolk Sand & Cement Co. v. Owen, 115 F. 778, 53 C. C. A. 96.

Accordingly the libelant may have a decree against the Meseck Towing & Transportation Company, Inc., with the usual reference to determine the damages, and the libel is dismissed as against the Boise Penrose and the United Marine Contracting Corporation.