860

## THE MAR MEDITERRANEO.
### No. 18551.

District Court, E. D. Louisiana.
Feb. 29, 1936.

Alfred C. B. McNevin, of New York City, and Terriberry, Young, Rault & Carroll (by Joseph M. Rault), of New Orleans, La., for libelants.

Kirlin, Woolsey, Campbell, Hickox & Keating (by Charles R. Hickox), of New York City, and Denegre, Leovy & Chaffe (by James Henry Bruns), of New Orleans, La., for claimant and respondent.

BORAH, District Judge.

This is a libel in rem by the holders of bills of lading to recover for alleged damage and loss to a cargo of 13,200 cases of sugar which was on May 31, 1920, shipped on board the steamer Mar Mediterraneo at Hamburg, Germany, for carriage to the port of New York.

The original libel was filed on September 30, 1926, more than six years after the alleged claim arose. It was first amended on March 3, 1927, and as amended recites that the cargo in question was shipped on the steamer in good order and condition and was delivered at New York on or about June 26, 1920, not in like good order and condition as when shipped, but that a large number of said cases of sugar were smashed or broken, and the contents of a number of cases slack or missing and damaged. Damage in the sum of $40,000 is claimed. On February 11, 1929, about two and a half years after the original libel was filed and approximately eight and one-half years after the alleged claim arose, a second amended and supplemental libel was filed adding a claim of fraud. This pleading alleges that many of the mate's receipts given by the vessel for the sugar at Hamburg contained a notation that the cases were weak, frail, or repaired, and that there would not be any responsibility for shortage, but that notwithstanding, clean bills of lading were given in exchange for a letter of indemnity from the shippers.

The answers filed in response to these pleadings admit the shipment of the cargo and the delivery thereof at New York and deny the other material allegations of the libel including the allegations of fraud. In addition and by way of defense, it is alleged that if the libelants sustained any damage it was due to shrinkage, breakage, or the insufficiency of the packing, and that by the terms of the bills of lading the carrier was expressly exempted from liability for damage due to shrinkage, breakage, or by the packing being insufficient or weak. As a further ground of defense it is alleged that the libelants failed to comply with the provision in the bills of lading which recites: "No claims for damage or shortage will be allowed unless reported to the Superintendent of the dock before delivery, and claim made within five days after delivery of the goods." Lastly it is pleaded that the claim is stale and prescribed.

A considerable portion of this record relates to the allegations of fraud, and the principal argument centers around the admissibility of what the libelants contend are photostatic copies of dock receipts and a letter of indemnity, same being the documents that are alleged to have been issued at the time when the cargo was loaded. At the trial in April, 1932, these documents were offered in evidence, and in

connection therewith the documents were stated to have been verified by an officer of the Hamburg-American Line and to have been annexed to certain pleadings in a suit in the Southern District of New York between the present libelants and the Hamburg-American Line. The present claimant was not a party to that in personam suit, as jurisdiction over it could not be obtained; accordingly, this court sustained the objection interposed and refused to receive the photostatic documents in evidence. A request to reopen the case for the purpose of submitting further, additional, and better proof was thereupon made and refused. Later and after a careful consideration of the record, the court on its own motion entered an order permitting the libelants "to make proof, if they can, of the matters set out in or sought to be proved by the excluded documents." Thereafter the libelants obtained an order for the issuing of letters rogatory to examine certain witnesses in Hamburg, Germany. The libelants also took the deposition of Julius P. Meyer, who had formerly been connected with the Hamburg-American Line and who had verified the answers to interrogatories in the proceeding that had been excluded from evidence at the trial of this case. In due course a hearing was had for the presentation of evidence, and the above testimony was then offered subject to the general objection that same did not constitute proper proof of the existence, authenticity, or contents of the photostatic documents. Claimant's numerous objections to the testimony and to the documents which were again offered in evidence are set forth in detail in the stenographic notes. In my judgment they are in the main well founded, and I hold that the documents in question should be excluded as they have not been properly proved. If I am correct in concluding that, however liberal the rules of evidence in admiralty may be, nevertheless the character and kind of proofs here offered by the libelants should not be received in evidence, then it follows that there is no proof to be found in this record which will sustain the allegations of fraud.

▮ What the record does show is that the goods were stowed, handled, and discharged by the ship in a careful manner and that the damage to the cargo was due to breakage and insufficiency of packages, for which claimant is not liable by reason of the exceptions in the bills of lading and by the terms of the Harter Act (46 U.S. C.A. §§ 190–195). Indeed, the record refutes the idea that there was ever any thought of a claim against the ship for negligent stowage or handling. Libelants' conduct in paying for the sugar with full knowledge of its condition; libelants' recognition of their obligation to pay and the payment of storage on a considerable portion of the cargo which was not removed promptly from the pier; libelants' arranging to recooper a number of cases at their own expense; libelants' conduct in advancing nearly three months later a claim for shortage in weight on the cargoes of the Mar Mediterraneo and the Kermit; libelants' subsequent withdrawal of this claim against the Mar Mediterraneo in a letter which covered the claims of both steamers, and in which letter they admit that "upon a careful rechecking of the figures on the above steamer we find that there was a difference of 1096 pounds, which was an average natural loss on the cargo, and for which you are in no way responsible," and in which letter with reference to the Kermit they advance a claim for loss as a result of breakage of packages without mention of a similar claim with respect to the Mar Mediterraneo— all certainly indicate a course of conduct inconsistent with the thought that they had any such claim.

Clause 9 of the bills of lading recites: "No claims for damage or shortage will be allowed unless reported to the Superintendent of the dock before delivery, and claim made within five days after delivery of the goods." There is no controversy here as to the validity or reasonableness of the clause, nor is there any question of waiver presented in this case. The sole question is: Have libelants carried the burden of proving compliance therewith as a condition precedent to recovery?

▮ Lignante, libelants' traffic manager, testified that he reported the damage to Williams, the superintendent of the dock, and stated to him that claim would be made for all the damage sustained. If this testimony be accepted as true, and there is nothing in the record save the probabilities to refute it as respondents have been unavailing in their efforts to locate Williams, there would still not be a compliance with the requirements of the clause. The clause requires claim to be made within five days after the delivery

of the goods and it has not been suggested that any claim was made within that period. In fact, the only claim put forward was the claim made nearly three months later, which was addressed to the Kerr Steamship Lines and covered shortage in weight for 30,090 cases delivered by the Mar Mediterraneo and the Kermit and also for 5 cases lost overboard by the stevedores in discharging the Mar Mediterraneo. The agents of the ship paid for the 5 cases, and accordingly that item is no longer in controversy, and as will appear by letter of the ship's agents dated January 15, 1921, the claim of the Mar Mediterraneo was repudiated on the ground of noncompliance with the notice clause in the bill of lading. Recitation of the fact has already been made that this claim was withdrawn. In view of the formal withdrawal of this claim nearly three months later, it is difficult to perceive how it can be maintained, even if it be conceded that this claim was made within the time provided in the bill of lading. However, it will be time enough to decide that question if and when it is properly presented. It will suffice to say here that libelants have neither complied with the provisions of the bills of lading nor attempted in any way to excuse their failure to do so.

■ Having reached the conclusion that libelants' claim is without merit and that the claim in this case was not made within the time specified in the bills of lading and accordingly must be barred, there still remains for consideration the defensive plea that this case is stale and prescribed.

The cargo in question arrived in New York on June 26, 1920, and the ship was discharged and the cargo delivered to the consignees on or about July 2, 1920. On the 27th of October, 1920, libelants by letter put forward a claim for shortage in weight aggregating $9,788.24. This claim was repudiated by the claimant on the 15th day of January, 1921, and seven days thereafter the libelants wrote to the claimant as follows:

"In accordance with our conversation this morning, we wish to withdraw our claim against the above steamer which was previously filed with you.

"Upon careful rechecking of the figures on the above steamer, we find there was a difference of 1096 lbs. which is the average natural loss on the cargo and for which you are in no way responsible."

In the same letter, as previously recited, libelants withdrew a claim which they had made for shortage with respect to the cargo of the Kermit which had discharged at the same wharf and at about the same time as the Mar Mediterraneo, and they substituted another claim which they said was the result of breakage of packages. After waiting more than six years after the cause of action arose, the present libel was filed in this court claiming damages for breakage of $40,000.

After such a lapse of years, as is to be expected, witnesses have disappeared and recollections of those once familiar with the transaction have become obscured. Libelants have been unable to find and produce the contract which was entered into between Lamborn & Co. and the Czechoslavakian Sugar Corporation of Prague, and the logbooks have disappeared. Furthermore, libelants have offered no satisfactory explanation for their lack of diligence in presenting their claim. The record shows that claimant's ships traded regularly between foreign ports and ports of the United States, and that libelants had 458 different occasions when they could have obtained jurisdiction over the claimant in a suit in personam, and that during 48 of these occasions they could have proceeded against the Mar Mediterraneo in rem. Under the circumstances the authorities seem clear that the libelants are barred whether the statute of limitation applicable by analogy is article 3536 of the Civil Code of Louisiana or Act No. 223 of the General Assembly of the State of Louisiana for the year 1914. Article 3536 of the Civil Code in so far as pertinent reads as follows:

"The following actions are also prescribed by one year: * * *

"That for the delivery of merchandise or other effects, shipped on board any kind of vessels.

"That for damage sustained by merchandise on board ships, or which may have happened by ships running foul of each other."

Act No. 223 of 1914 is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That all actions by or against common carriers for the collection or recovery of erroneous freight charges, and all actions for loss of or damage to shipments of freight, shall be prescribed by two years,

said prescription to run from the date of shipment.

"Section 2. Be it further enacted, etc., That all laws, or parts of laws, in conflict with this Act be, and the same are hereby, repealed."

Whether the one-year or two-year statute of limitations is applicable need not be determined, as the libel in the instant case was not filed until more than six years after the alleged claim arose. Though not strictly a bar in admiralty, there does not seem to be sufficient reason why the appropriate statute of limitations should not be followed by analogy in this court as in equity, especially where, as here, there are no exceptional circumstances that would render the running of the statute of limitations inequitable. McGrath v. Panama R. Co. (C.C.A.) 298 F. 303; Nolte v. Hudson Navigation Co. (C.C.A.) 297 F. 758; The San Rafael (C.C.A.) 141 F. 270.

My conclusions with respect to all of the issues are in favor of the claimant. The libel accordingly must be dismissed with costs. Claimant will prepare appropriate decree.